GEORGE M. FORMAN AND GEORGE M. FORMAN AND HERMAN HACHMEISTER, AS COPARTNERS UNDER THE FIRM NAME AND STYLE OF GEORGE M. FORMAN & COMPANY, *Appellants, v.* FIRST NATIONAL BANK OF QUINCY, A CORPORATION; NORTH GEORGIA NATIONAL BANK, A CORPORATION; AMERICAN NATIONAL BANK OF ASHEVILLE, A CORPORATION, MOSES GUYTON, JR., LUCY H. GUYTON, HIS WIFE, AND JOHN H. CARTER, *Appellees.*

Opinion filed June 25, 1918.

1. Where one loans money upon real estate security for the express purpose of paying off prior existing liens upon such real estate, and it is expressly agreed that intervening liens thereon will be released or subordinated to such security, and the money loaned is so used and a bona fide though futile effort is made to subordinate such intervening liens to such security and thus give to it the same legal status as that occupied by the liens that are so paid off, he will be treated in equity as an equitable assignee of such liens and will be subrogated to the rights of such lienors to the extent that the money advanced by him was applied to the payment of such liens.

2. The agreement out of which conventional subrogation arises and upon which it rests may be either express or implied.

3. One who, upon the application of the owner, lends money upon land understanding that his security shall be a first lien thereon and the money so loaned is used to discharge then existing first liens upon such land is not a mere volunteer.

Appeal from Circuit Court for Jackson County, C. L. Wilson, Judge.

Decree reversed.

*Blount & Blount & Carter* and *Wm. B. Farley,* for Appellants;

*Paul Carter,* for Appellees.

WEST, J.—This is the second time this case has reached this Court. On the former appeal (First National Bank of Quincy v. Guyton, 72 Fla. 43, 72 South. Rep. 460) the question now presented was not involved.

. The complainant banks in the original suit filed their bill to foreclose a mortgage upon certain real estate in Jackson County, made by Moses Guyton and his wife to J. H. Carter. This mortgage was made on January 12th, 1909, and was given to secure the payment of three promissory notes which were subsequently and before maturity transferred by endorsement to said banks, one of said notes to each of said banks. There was no formal transfer of the mortgage to the banks, but on the former appeal it was held that the endorsement of the notes had this effect.

It appears from the record that on the 11th day of July, 1910, Carter executed an instrument to Guyton called a "release" which had for its purpose the subordination of the lien of the mortgage made to him, as

to certain of the real estate embraced in it, to a mortgage made by Guyton and his wife to George M. Forman, dated May 18th, 1910, given to secure the payment of a loan of $2,500.00 which loan was consummated and the money paid on September 9th, 1910.

By answer and cross-bill Forman averred and alleged that he made the loan to Guyton for the purpose of paying off a mortgage made by Guyton upon the same real estate to D. R. Burgess & Co. dated February 13th, 1906, and two certain judgments against Guyton, one recovered by J. M. Dillon on June 1st, 1908, and the other by Central State Bank on June 18th, 1908, all of which were liens superior to the Carter mortgage, and that Guyton agreed to secure a release of the Carter mortgage so that the mortgage to Forman would be a first mortgage and a lien of superior dignity to the Carter mortgage. The prayer was for a foreclosure of his mortgage and for subrogation to the rights of Burgess & Company and said judgment creditors. The Chancellor decreed foreclosure of the Carter mortgage and denied the prayer of the cross-bill with respect to the subrogation of Forman. The appeal is from that decree, and the decisive question is whether upon the showing made the prayer of the cross-bill for subrogation should have been granted.

With respect to this feature of the case the following facts seem to be established: That Guyton made an application in writing to Forman for a loan of $2,500.00 "to liquidate some of my indebtedness" and represented therein that the real estate which he proposed to mortgage as security for the payment of the amount borrowed was covered by a mortgage to Burgess & Co., and the mortgage to Carter which would be released; that he, Guyton, would furnish a complete abstract of the title to the property mortgaged showing the loan mortgage

to be a first lien and agreeing that the money loaned him could be used in discharging all liens on the real estate mortgaged before the loan was completed. The abstract was furnished and the mortgage was made by Guyton and wife to Forman on May 27th, 1910, in which it was convenanted that the premises were free of all incumbrances. The original release executed by Carter, the record owner, of the mortgage made to him on most of the same property, purporting to subordinate the lien of such mortgage to the Forman mortgage, was delivered to Forman. The check for the amount of the loan was thereupon transmitted to the designated agent of Guyton, who had negotiated the loan, with instructions to apply the amount to the payment of the Burgess & Co. mortgage, which was then in the hands of an attorney for foreclosure. and the judgments of Dillon and Central State Bank and secure cancellations thereof which was done on September 9th, 1910, and the Burgess mortgage sent to Forman.

That Guyton believed that he was giving and Forman understood that he was securing a lien that was superior to the lien of the Carter mortgage and which would bear the same relation to it as that borne by the Burgess & Co. mortgage is not disputed, but the contention is made that this case is controlled by the decision in the case of Boley v. Daniel, 72 Fla. 121, 72 South. Rep. 644, and that, conceding all the facts to be proven which the evidence tends to prove, a case for the application of the doctrine of subrogation is not made out.

This case is clearly distinguishable from the Boley case. There Daniel the party occupying the same relative position as that occupied in this case by Forman was alleged to have "no actual notice or knowledge" of an intervening mortgage on the property covered by his

mortgage at the time when he paid and caused to be satisfied on the record a prior mortgage on such property; and it is also alleged that he took the mortgage which he held "in the belief that there were no other mortgages on the property." It was held in that case, in effect, that inasmuch as he denied any knowledge of such intervening mortgage that it could not be successfully contended that it was agreed that the mortgage which he took should be superior to it.

Here, however, the case is different. Forman knew of the Carter mortgage and such steps were taken as seemed to be essential to give to the Forman mortgage the same status as that occupied by the Burgess & Co. mortgage and to preserve the *status quo* of the Carter mortgage. Carter was the apparent owner of the mortgage made to him by Guyton. He appeared from the public records of the County to be the owner and the formal execution by him of the purported release thereof for the purpose of giving to the Forman mortgage the same legal status as that occupied by the Burgess & Co. mortgage was tantamount to an assertion by Carter that he was still the owner of such mortgage. It is true, as held by the Court, that such release was without effect to accomplish the purpose for which it was designed, but that was because the notes which the mortgage was given to secure had previously thereto been endorsed and transferred to other parties, all of which was unknown to Forman, and Carter, not realizing the legal effect of such endorsement with respect to the transfer of the mortgage, did not disclose it.

Where one in taking a mortgage on real estate in good faith relies upon the record title of such real estate and representations of prior incumbrancers he is not chargeable with negligence. There is no question of the *bona*

VOL. 76, JUNE TERM, 1918. 53

Forman et al. v. First Nat. B. of Quincy et al.—Opinion of Court.

*fides* of Forman in the transaction and he should not be denied the right to invoke the equitable doctrine of subrogation because he did not find the actual owners of the Carter notes and mortgage, and especially so since Carter himself continued to act as such owner. Kent v. Bailey, .. Iowa .., 164 N. W. Rep. 852; Home Sav. Bank v. Bierstadt, 168 Ill. 618, 48 N. E. Rep. 161.

The modern authorities agree that the doctrine of subrogation has been steadily expanding and growing in importance and extent in its application to various subjects and classes of persons and that the agreement out of which conventional subrogation arises and upon which it rests may be express or implied. Kent v. Bailey, *supra;* Home Sav. Bank v. Bierstadt, *supra;* Walker v. Walker, .. Tenn. .., 200 S. W. Rep. 825; Thompson v. Connecticut Mut. Life Ins. Co., 139 Ind. 325, 38 N. E. Rep. 796; Gore v. Brian, (N. J.) 35 Atl. Rep. 897; Bankers' Loan & Investment Co. v. Hornish, 94 Va. 608, 27 S. E. Rep. 459; Emmert v. Thompson, 49 Minn. 386, 52 N. W. Rep. 31; Southern Cotton Oil Co. v. Napoleon Hill Cotton Co., 108 Ark. 555, 158 S. W. Rep. 1082. Thus in Kent v. Bailey, *supra,* the Court said: "Conventional subrogation arises by virtue of an agreement express or implied, that a third person or one having no previous interest in the matter involved shall, upon discharging an obligation or paying a debt, be substituted in the place of the creditor in respect to such rights, remedies or securities as he may have against the debtor."

The general rule for the application of this doctrine is stated by Pomeroy as follows: "Equity does not admit the doctrine of equitable assignment in favor of every person who pays off a mortgage. Such relations must exist towards the mortgaged premises or with the other parties, that the payment is not a purely voluntary act,

but is an equitably necessary or proper means of securing the interests of the one making it from possible loss of injury. The payment must be made by or on behalf of a person who had some interest in the premises, or some claim against other parties, which he is entitled, in equity, to have protected and secured. A mere stranger, therefore, who pays off a mortgage as a purely voluntary act can never be an equitable assignee. In general, when any person having a subsequent interest in the premises, and who is therefore entitled to redeem for the purpose of protecting such interest, and who is not the principal debtor primarily and absolutely liable for the mortgage debt, pays off the mortgage, he thereby becomes an equit-able assignee thereof, and may keep alive and enforce the lien so far as may be necessary in equity for his own benefit; he is sugrogated to the rights of the mortgagee to the extent necessary for his own equitable protection. The doctrine is also justly extended by analogy, to one who, having no previous interest, and being under no obligation, pays off the mortgage, or advances money for its payment, at the instance of a debtor party and for his benefit; such a person is in no true sense a mere stranger and volunteer." 3 Pomeroy's Eq. Jur. (3rd ed.) Sec. 1212.

The facts in this case differentiate it from the Boley case and upon authority and well established principles of natural justice warrant the holding that Forman is entitled to subrogation to the lien of the Burgess & Co. mortgage and the Dillon and Central State Bank judgments to the extent that the money advanced by him was applied to the payment of such mortgage and judgments.

The complainant banks can not complain at this conclusion. It leaves them in precisely the same position, with respect to their security, that they occupied at the

time they became the holders of the notes which are the basis of their claims.

The decree will be reversed with direction to modify the final decree so as to conform to the views herein expressed.

BROWNE, C. J. AND TAYLOR AND WHITFIELD, J. J., concur.

ELLIS, J., dissents.

ELLIS, J., *dissenting.*—When one finds his views upon any question to be very different from those entertained by his colleagues, in a spirit of fairness to himself he feels impelled to re-examine his own views and scrutinize with care the processes by which he arrived at them, that he may ascertain where exists the error which led him astray, if indeed, he has been led astray.

And when those with whom he is associated and with whose views his own unfortunately for himself do not agree, are men of a high degree of integrity and much ability, his conviction must be deep if he opposes his views to theirs.

And while I offer the sincerity and depth of my conviction as the excuse for preparing this opinion its justification must be found in its reasoning if at all.

In the first place the contention of Forman that the Carter mortgage had been released in accordance with the agreement between him and Guyton made at the time of the loan, was without merit. See First Nat. Bank of Quincy v. Guyton, 72 Fla. 43, 72 South. Rep. 460.

When this case was here before the record presented no question of subrogation. This Court, in its opinion denying a petition for rehearing which was presented upon the ground that the question of Forman & Com-

pany's subrogation to the Burgess mortgage and the judgments was overlooked, said: "There being no question of subrogation properly presented, the appellees suggestion that subrogation may be involved is not well taken." See First Nat. Bank of Quincy v. Guyton, *supro.*

Yet the record which was presented to this Court upon the first appeal was the same in all respects but one as that presented now upon this appeal. The only difference being in the decrees of March 13, 1915, and November 28, 1916. The former decree was reversed which held that the equities were with the cross-complainants, Forman & Company, and that they were entitled to the relief prayed in the cross-bill. That as between the complainants in the original bill as amended and the defendants Guyton and wife the equities were with the complainants in the said original bill as amended in so far as they prayed for the foreclosure against said defendants Guyton and wife of the mortgage to Carter.

That the mortgage to Forman from Guyton and wife created a valid, prior and superior lien upon the property described as against the defendants including the bank and the Forman mortgage was adjudged to be a lien superior to the lien of the mortgage from Guyton to Carter.

The first decree in nowise indicates that the Chancellor confined his consideration of the case to the single question of whether the Carter release was valid, and there can be no assumption that he did except from matter outside the record. The briefs of counsel for Forman state that the question of subrogation was argued before the Chancellor.

If the Chancellor had found that the position taken by Forman's counsel on either proposition was correct

the decree would have been the same. That is that the Forman mortgage was a superior lien .to the Carter mortgage.

Upon the appeal, however, this Court considered only the one question of whether the Carter release was valid and declined to consider whether Forman was entitled to subrogation to the Burgess mortgage and the two judgments because the Court did not then consider that the latter question was presented. If it had been considered that the question of subrogation was presented in the record, it would have considered the *whole case* upon *its merits* and thus followed an unbroken line of decisions by this Court to the effect that an appeal from a final decree brings up the whole merits of the cause, and that upon reviewing the whole case upon its merits will direct such decree to be entered as should have been entered. See Smith v. Croom, 7 Fla. 180; Bloxham, Comptroller v. Florida Cent. & P. R. Co., 35 Fla. 625, 17 South. Rep. 902; Fairchild v. Knight, 18 Fla. 770; Parken v. Safford, 48 Fla. 290, 37 South. Rep. 567; Foster v. Ambler, 24 Fla. 519, 5 South. Rep. 263; Ocala Foundry & Machine Works v. Lester, 49 Fla., 347, 38 South. Rep. 56.

An appeal in equity is substantially a rehearing of the case, and the Appellate Court has the right to look into the whole case as it is *presented* by the *record*, and may consider points made primarily in the Supreme Court if raised by the pleadings and proofs. Care, however, must be taken that neither party be permitted to surprise or mislead his adversary—or to make objections which if made in the Court below might have been obviated—Logan v. Slade, 28 Fla. 699, 10 South. Rep. 25. Moreover it is the duty of this Court under the Statute to examine the record and to give such decree as the

Court below ought to have given, or as it may appear according to law. Sec. 1707 Gen. Stats. 1906, Florida Compiled Laws, 1914.

If the views expressed in the majority opinion are correct, then the decision of this Court upon the first appeal was clearly wrong because the first decree of the Chancellor below according to the majority decreed substantial justice. Cimino v. Smith, 57 Fla. 385, 49 South. Rep. 545; Hobbs v. Frazier, 61 Fla. 611, 55 South. Rep. 848. It is not permissible to assume that the Chancellor did not pass upon the question of subrogation and then say that as the question is one of fact this Court would have exercised original jurisdiction if it had passed upon the question and affirmed the first decree, because neither the assumption nor the proposition of law is sound.

By what means is the Court to ascertain whether or not the Chancellor did pass upon the question of fact (subrogation)? The only legitimate source of information is the decree itself. That does not show that he did not consider the question. To assume that he did not consider the question, if it was presented, is to say that he blundered into a correct conclusion. To contend that on an appeal from a final decree this Court is precluded from considering any question of fact which the Chancellor in his decree omitted to state that he considered, because that would be exercising original jurisdiction by this Court; is to shake from its base a principle which has governed this Court from its earliest history. The fallacy of such a contention was exposed by Mr. Justice Dupont in 1857 in Smith v. Croom, *supra;* nor has any justice of this Court ever announced a rule contrary to the views therein expressed until the present time. The question of subrogation was not presented by the record

in the first appeal as this Court said in the opinion on the petition for rehearing.

When then was the question of subrogation presented and to whom? We held in the first case that the record did not present such a question. But it seems the majority has found that the question is presented in this case, although the bill and answers and cross-bill and answers thereto and replications to answers and cross-bill and answers thereto and replications to answers and testimony are identical in both cases. There was not a pleading nor a word of evidence added to the record after the first decree was entered.

So upon the same record the majority holds that the question of subrogation was and was not presented. In the brief of counsel for Forman, the appellee in the first case it was argued that Forman was entitled in equity to be subrogated to the Burgess mortgage. The point was argued and authorities were cited. Yet the language of the Court was: "There being no question of subrogation properly presented the appellees suggestion that subrogation may be involved is not well taken, and the petition for a rehearing is denied."

In view of the fact that counsel for Forman did present and argue to this Court by brief the question of subrogation, the conclusion is irresistible that the language of the Court above quoted means that neither the answer of Forman & Company to the original bill, nor the allegations of his cross-bill, nor the evidence in the case present any question of subrogation. I am still of that opinion.

The second decree rendered about three months after the petition for rehearing was denied adjudicated the equities to be with the complainants in the original bill; decreeing in effect that the Carter mortgage being held

by the banks before Carter undertook to release it, it was in force notwithstanding his attempted release and that as the two judgments and the Burgess mortgage were *cancelled* as per agreement between Guyton and Forman when the latter made the loan, there was no subrogation in favor of Forman to the Burgess mortgage and the two judgments. In holding thus the Chancellor strictly followed this Court in the two cases of First National Bank of Quincy v. Guyton, *supra,* and Boley v. Daniel, 72 Fla. 121, 72 South. Rep. 644.

In the case of Boley v. Daniel, *supra,* this Court considering the question of subrogation, said: "Subrogation is the substitution of one person in the place of another with reference to a lawful claim or right. Subrogation arises by operation of law where one having a liability or a right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid. This is called legal subrogation. Conditional subrogation depends upon a lawful contract and occurs where one having no interest in or relation to the matter pays the debt of another and by *agreement* is entitled to the securities and rights of the creditor paid." Again: "As Lee Daniel was under no obligation whatever to pay the note that was secured by the first mortgage on the property given by Waters to Brooks and had no interest in or relation to the property, there *can* be no legal subrogation of Daniel to the rights of the holder of the first note and mortgage. If there can be a subrogation it *must* be a conventional subrogation and *based on an agreement of the parties that the first mortgage lien shall continue for the benefit of Daniel.* (Italics mine.) An agreement between Daniel and the mortgagors that he was to have a first lien on

the property covered by said mortgage is not necessarily an agreement that the first mortgage lien shall remain in force for the benefit of Daniel."

The doctrine of subrogation thus announced by this Court finds support in the authorities cited in the majority opinion. The Court in the Boley-Daniel case said: "The conclusion here reached is not inconsistent with the decisions in Thompson v. Connecticut Mut. Life Ins. Co., 139 Ind. 325, 38 N. E. Rep. 796, and Bankers' Loan & Investment Co. v. Hornish, 94 Va. 608, 27 S. E. Rep. 459, cases cited in the majority opinion.

It is stated in the majority opinion: "That Guyton believed that he was giving and Forman understood that he was securing a lien that was superior to the lien of the Carter mortgage and which would bear the same relation to it as that borne by the Burgess & Co. mortgage is not disputed," etc. There is no averment of fact in Forman & Company's answer to the original bill nor allegation of fact in his cross-bill nor statement in the testimony and depositions of witnesses nor in the documentary evidence submitted, to the effect that Forman's mortgage should bear the same relation to the Carter mortgage as the Burgess & Company mortgage bore to it. Upon the other hand it was the agreement of the parties, testified to by their witnesses and shown by the documentary evidence in the case, all of which is undisputed in the record, that the judgments were to be paid and cancelled the Burgess & Company mortgage paid and discharged and the Carter mortgage released by Mr. Carter. In that way it was expressly agreed between Guyton and Forman that the latter should have a first lien upon the lands.

The notes from Guyton to Forman and the mortgage securing the payment of same are dated May 18, 1910,

acknowledged on the 27th and recorded on the 28th day
of the same month in the public records of Jackson
County. It is alleged in the cross-bill of Forman and
shown by the evidence that the Burgess & Company
mortgage was paid in September, 1910. That Carter's
"release" of his mortgage was obtained to secure money
from Forman to "pay off" the judgments and the Burgess
& Company mortgage. In other words it was the inten-
tion of the parties, their minds met upon the pan, viz:
to pay the judgments and Burgess mortgage and obtain
a release from Carter and by that means the Forman
mortgage would be a first lien upon the land. This plan
was carried out. It was never agreed that the judgments
or the Burgess mortgage should remain in force for the
benefit of Forman. On the other hand the evidence shows
that they agreed expressly that the judgments and Bur-
gess mortgage should be extinguished: The cancellation
by written instruments were procured for record, then
the loan was fully paid over to Guyton through Mr.
Ormond.

Two years afterward, in March, 1912, the holders of
the Carter notes filed a bill to foreclose the Carter mort-
gage. Forman & Company were made defendants. They
defended upon the ground that the release by Carter was
valid. Their cross-bill to foreclose the mortgage given by
Guyton to them was based upon the theory that Carter
being the President of the banks to whom he transferred
the notes, had the authority to release the mortgage and
his act was the act of the bank. The prayer was for
foreclosure of the mortgage executed by Guyton to them.
The prayer for subrogation was a secondary matter.
The language of the prayer is: "If the Court should find
necessary from the law and the facts that said priority
of lien prayed be given by decreeing the said George M.

Forman, complainant in cross-bill the right of subroga-
tion to the lien of the Burgess mortgage, Exhibit D, and
to the lien of the two judgments prior to the said Carter
mortgage hereinbefore set up, and to frame the decree
as to Your Honor shall seem meet and proper and ac-
cording to equity and good conscience."·

The briefs in this Court in the first appeal were de-
voted mainly to the question of the priority of the For-
man mortgage over the Carter mortgage because of Car-
ter's release of the latter mortgage and the cancellation
by agreement of the Burgess mortgage and the two judg-
ments.

I think that the supposed equity found by the majority
arises out of the fact that Forman & Company and Guy-
ton misunderstood the law of the State upon the subject
of the assignment of mortgage securities and that in
order that substantial justice be done a *new* contract for
the parties should be made and enforced. But in this the
majority ignores the rule that equity will not relieve
against a mistake of law, without pointing out in what
particular the instant case presents an exception which
will warrant the interference of equity. In the case at
bar both Forman and Guyton entered into the transac-
tion with full knowledge of the material facts and with-
out any special circumstances giving rise to an equity
in Forman's behalf. Notwithstanding this knowledge
Forman made the contract affecting his interests under
an ignorance with respect to the rule of law controlling
the case. See 2 Pomeroy's Eq. Jurisprudence, Sec. 842;
Story's Eq. Juris. (13th ed.) 108; Hollingsworth v. Stone,
90 Ind. 244; Glenn v. Statler, 42 Iowa 107; Bledsoe v.
Nixon, 68 N. C. 521; Hampton v. Nicholson, 23 N. J. Eq.
423; 10 R. C. L. 304.

The cases where equity has given relief because of a

mistake of law show that the jurisdiction was founded upon exceptions rather than on fixed rules.   10 R. C. L. 308.

It is not contended by Forman that his mistake was one of fact, nor was it a mistake of fact.   He thought that because Carter was the President of the banks to whom he had transferred the notes secured by the mortgage he had the right to release the mortgage as the records of Jackson County showed no assignment of the mortgage to them.   See his answer and cross-bill and brief of his counsel.   In this Forman ignored the law that the assignment of the note carried with it the mortgage and did not inquire of Carter whether he was still the owner of the notes when he executed the release. So Forman made a contract for the extinguishment of the judgment and the Burgess mortgage and *made* no *agreement* for subrogation to those liens.   But the majority opinion not only allows him to urge this mistake of law as a basis for interfence by equity, but permits him to do it as against strangers, namely the complainants, which is not permissible in equity.   See Campbell v. Lowe, 9 Md. 500.

But if the question of subrogation was presented by the record and in the former appeal this Court in denying the petition for rehearing said it was not, it was a question of fact, *viz*: was the subrogation claimed based upon an agreement between the parties, express or implied?   The Chancellor said it was not.   That the evidence did not show any such agreement.   The evidence in this record not only does not clearly show such conclusion to be erroneous, but overwhelmingly supports the Chancellor's finding of fact.   Yet the majority opinion reverses that finding, thus ignoring a rule established by a long line of decisions by this Court that unless the

record clearly discloses that a Cancellor's finding of fact is erroneous, such finding will not be disturbed. See Waterman v. Higgins, 28 Fla. 660, 10 South. Rep. 97; Dean v. Dean, 36 Fla. 492, 18 South. Rep. 592; City of Jacksonville v. Huff, 39 Fla. 8, 21 South. Rep. 74; Lucas v. Wade, 43 Fla. 419, 31 South. Rep. 231; Farrell v. Forest Inv. Co., 73 Fla. 191, 74 South. Rep. 216.

Neither one of the parties claimed that there was a legal subrogation in favor of Forman, nor does the record show any.

The decree of the Chancellor should be affirmed because the law of the case was determined by the first appeal and for the further reason that no conventional subrogation existed in favor of Forman to the judgment liens and the lien of the Burgess mortgage, no contract was made on which it could rest, the Chancellor found the facts to be so and the record amply supports the finding. See list of Florida cases cited in Florida Compiled Laws, 1914, page 1707, under Note 57.