YOUNG MEN'S BUILDING ASSOCIATION *v.* WARE.

Opinion delivered April 2, 1923.

1. SUBROGATION—BASIS.—The doctrine of subrogation is an equitable one, having for its basis the doing of complete and perfect justice between the parties, without regard to form, and its purpose and object is the prevention of injustice.

2. SUBROGATION—CLAIMS NOT PERFECTED AS LIENS.—Plaintiff, by paying off claims against a building, which might have become liens, had the statutory steps been taken, will not be entitled to subrogation as if it had discharged liens thereon.

3. MECHANICS' LIENS—ASSIGNMENT OF CLAIMS.—Under Crawford & Moses' Dig., § 6907, making liens assignable, the right to prosecute a mechanics' lien is not assignable; but, before a lien can be transferred or assigned, the claim on which it is based must have been established as a lien in the manner required by the statute.

Appeal from Pulaski Chancery Court, *John E. Martineau,* Chancellor; affirmed.

*Sam. M. Wassell,* for appellant.

Appellant was entitled to subrogation to the liens of materialmen and laborers whose claims it paid and for the purchase money note taken up, for which it was

entitled to a prior lien, and to share alike with all other lienors in other claims. Sec. 6909, Crawford & Moses' Digest; § 4975, Kirby's Digest; sec. 18, act 146, Acts 1895, expressly repealed by § 6, act 446, Acts 1911; § 6920, C. & M. Digest, provides for equality of lienholders (56 Ark. 640). Sec. 6912, Crawford & Moses' Digest, makes owner liable for cost of improvement to mechanics, materialmen, regardless of contract price. Assignee of a lien claim may sue in his own name. Sec. 6907, Crawford & Moses' Digest. *Barnett* v. *Wright,* 172 S. W. 524; *Southern Cotton Oil Co.* v. *Napoleon Hill Cotton Co.,* 108 Ark. 555; Sheldon on Subrogation, § 2; *Smith* v. *Davis,* 76 S. E. 671. Appellant entitled to prior lien for purchase money note paid and all others to owner's remainder interest in property after payment thereof, § 6908, C. & M. Digest. It surrendered a valid security, the purchase money note, for an invalid one, its first mortgage not being good against lien of materialmen, mechanics, and should be protected by subrogation. *Rook* v. *Matthews,* 125 Ark. 378; 108 Ark. 555; 158 S. W. 1082; Sheldon on Subrogation, § 2; *Smith* v. *Davis,* 76 S. E. 671; *Federal Surety Company* v. *McGuire,* 111 Ark. 373. The amended answer herein followed McGuire case.

*McConnell & Henderson, J. H. Carmichael,* and *Wallace Townsend,* for different appellees.

The doctrine of subrogation has no application in this case. No evidence showing appellant paid off any liens against the property. *Southern Cotton Oil Co.* v. *Napoleon Hill Co.,* 108 Ark. 555; *Cook* v. *Moore,* 152 Ark. 590, is precisely in point. There was no assignment of any liens to appellant. *Martin* v. *Blytheville Water Co.,* 115 Ark. 230; *Royal Theatre* v. *Collins,* 102 Ark. 539; *Daly* v. *Arkadelphia Milling Co.,* 124 Ark. 405. Sec. 6907, Crawford & Moses' Digest, authorizes assignment, and in *Barnett Bros.* v. *Wright,* 116 Ark. 45, lien had been perfected before claim assigned. Appellees held perfected mechanics' liens against the property for labor and materials furnished, and the chan-

cellor correctly held they were prior to lien of appellant. Sec. 6911, Crawford & Moses' Digest.

*Sam. M. Wassell,* in reply.

Secs. 6884, 6906, and 6907, Crawford & Moses' Digest; *Federal Union Surety Co.* v. *McGuire,* 111 Ark. 373; *Barnett* v. *Wright,* 116 Ark. 44. The money of appellant went to discharge claims of equality of appellees, paid to claimants, and it should be protected by subrogation. *Southern Cotton Oil Co.* v. *Napoleon Hill Co.,* 108 Ark. 555. Had it paid the money to the owner instead, then *Southern Trust Co.* v. *Garner,* 223 S. W. 369, might apply.

WOOD, J. The appellant instituted this action to foreclose a mortgage executed by the appellee, T. E. Ware and wife, to the appellant on lot 2, block 4, Martin's Addition to the city of Little Rock, to secure a loan of $3,500 made by the appellant to Ware. The complaint alleged that Ware had defaulted in the payments as required by the mortgage. T. P. Reed, who claimed an interest in the property, was named as a party defendant. By an amendment to the complaint the appellant alleged that it had become the owner by assignment of the following claims:

| | |
|---|---:|
| Central Bank (money for labor) | $1,500.00 |
| Union & Merc. Trust Co. (purchase of lot) | 800.00 |
| R. P. Allen (judgment and costs) | 152.93 |
| Insurance | 31.50 |
| Tom Ware (for labor) | 812.65 |
| Total | $3,297.08 |

It is further alleged that the amounts above specified were paid to the parties "who were entitled to, and did, in some instances, file liens, and that said payments were made to save costs attendant upon declaring the liens." The appellant alleged that the above amounts represented sums which had been paid to lienors who had

furnished material and labor, and who were entitled to prior liens, and appellant prayed that it, as assignee, be entitled to the same priority as the parties whose liens it had acquired, and that it be decreed to share equally with other unpaid lienors.

Some parties filed separate suits, and there were interventions filed by other parties. These separate suits and interventions were all consolidated in the foreclosure suit of the appellant, and were all treated as interveners at the trial. These suits and interventions are by the following parties, and for the amounts set opposite their respective names:

| | |
|---|---:|
| Arkansas Brick & Tile Co. | $ 147.25 |
| Monarch Mill & Lbr. Co. | 73.77 |
| Pace & Hall | 157.10 |
| Riley Lumber Co. | 1,007.60 |
| R. A. Thieme | 457.00 |
| Arkansas Electric Co. | 192.68 |
| Sidewalk Improvement Dist. No. 228 | 19.41 |
| Henry Johnson | 188.55 |
| Arthur Almon | 70.00 |
| Total | $2,313.36 |

It was stipulated that each of the above interveners "had properly complied with the law of the State of Arkansas and had perfected their several liens, and were entitled to liens on the property in controversy for the amounts above stated," and that the liens for the above amounts were prior to the execution and filing for record of the mortgage to appellant.

The only question at issue before the trial court was whether or not the appellant was entitled to share *pro rata* with the interveners and preferred lienors, as set out above, to the extent of the amount of the claims which it had paid, as set forth above, and which claims total the sum of $3,297.08.

Renton Tunnah, the secretary of the appellant, testified that appellee Ware was building a house on the lot in controversy, and had borrowed money from Wait of the Central Bank to pay his labor bills, amounting to $1,500. He owed the Union & Mercantile Trust Company $800, balance of the purchase money on the lot. The association took up these amounts, and paid the balance of the money for labor on the house. He had checks to show that it was paid out at different times.

The court found that there was due the appellant the sum of $3,689 and eight per cent. interest from October 22, 1920; that the interveners' claims mentioned above were liens upon lot 2, block 4, in Martin's Addition to the city of Little Rock. The court entered a decree against Ware in favor of the appellant in the above sum, with interest, and also in favor of the interveners for the amounts set out above, with interest, and declared that the liens of the interveners were prior and paramount to the mortgage lien of the appellant, and entered a decree directing that the property be sold to satisfy the decree, and that out of the proceeds the decree in favor of the interveners should be paid in full, and, after these judgments were paid in full, that the decree in favor of the appellant then be paid.

The appellant excepted to the finding and judgment of the court and the fixing of priority in favor of the appellees, and prosecutes this appeal.

In the case of *Southern Cotton Seed Oil Co.* v. *Napoleon Hill Cotton Co.,* 108 Ark. 555, we said: "The doctrine of subrogation is an equitable one, having for its basis the doing of complete and perfect justice between the parties, without regard to form, and its purpose and object is the prevention of injustice." And quoting from *Capen* v. *Garrison,* 193 Mo. 335, we further said: "Equity will apply it (subrogation) though the parties may never have thought of it, if it is not inconsistent with the contract or in violation of any one's legal rights, and if justice demands it. * * * * The usual application

of this principle occurs where a person, at the request of the debtor, pays the mortgage debt, or where one interested in the property pays an incumbrance to protect his own interest, or where he stands in the relation of surety to the debt.''

The appellant invokes this doctrine of subrogation, as thus recognized in the above and other Arkansas cases, to support its contention that the court erred in not allowing it to be paid first the sum of $800 as subrogee of the Union & Mercantile Trust Company, and in not allowing it to share equally with the interveners in the distribution of the remainder of the funds. But the doctrine of subrogation above announced has no application to the facts of this record, for the reason that the appellant has wholly failed to prove the allegations of its amended complaint, namely, that ''it was the owner by assignment of lien for the amounts named in the amended complaint, and that, as such assignee, it was entitled to the same priority as the interveners'' whose claims were conceded to be established liens. The only testimony in the record upon which the appellant bottoms its contention is that of Tunnah, *supra*. This testimony falls far short of showing that the Union & Mercantile Trust Company, to whom the appellant paid $800, had a lien on the lot in controversy to secure the sum of $800, the balance of the purchase price of the lot. The mere statement of Tunnah that the appellant paid $800 to the Union & Mercantile Trust Company, which was the ''balance for the purchase of the lot,'' does not prove either that the Union & Mercantile Trust Company had a lien on the lot to secure this balance, or that the Union & Mercantile Trust Company assigned to appellant, or attempted to assign, any lien for a balance of the purchase money. The testimony of Tunnah as to this $800 is entirely too vague to establish a lien or incumbrance on the lot in favor of the Union & Mercantile Trust Company, which was paid off by the appellant and transferred to it by the Union & Mercantile Trust

Company. Appellant therefore cannot claim this amount by subrogation against the claims of the interveners, which claims the appellant concedes to be valid.

Likewise we are convinced that the testimony of Tunnah wholly fails to prove. that the appellant had a lien by assignment, or otherwise, for the $1,500 which it claims it paid for labor. Repeating the testimony of Tunnah on this issue, he says: ''Ware got himself in pretty bad shape. He was building a house on No. 2, that is, the house in controversy. He had borrowed some money from Mr. Wait to pay his labor bills to the amount of $1,500. We took up the $1,500 that was due for labor, and paid the balance of the money for labor on the house. I have the checks to show that it was paid out at different times.'' Further along in his testimony he states: ''Ware was getting in bad shape, and considerable liens were filed against No. 2, and the building association didn't feel disposed to do anything more in Tom Ware's name.'' Now, this testimony is too uncertain to show that any laborers' liens were established on lot No. 2. While he makes the broad statement that about that time considerable liens were filed against No. 2, he didn't pretend to state the amounts of these liens, nor when they were filed, nor that the liens were for labor that was done on the house on lot No. 2. The testimony in the record shows that Ware, the owner at the time, was also engaged in building on lot No. 3. Furthermore, his testimony shows that the money to pay his labor bills had been borrowed by Ware from Wait, and that appellant paid Wait, of the Central Bank, the $1,500. There is nothing in this record to prove that Ware, who paid off the laborers' liens, or the Central Bank, who furnished him the money, had any liens that they could enforce as laborers' liens. So, even if the appellant stood in the shoes of Ware, or of the Central Bank, appellant held no lien which could be enforced as laborers' liens against the property in controversy. The proof on the part of appellant wholly fails to show that there

were any perfected liens for labor on the property in controversy which the appellant discharged. To have made its case complete in this respect, it was necessary for the appellant to show that valid liens had been established against the property in controversy in the manner pointed out by the statute; that is, that liens of laborers had been filed within the time prescribed by statute, or that suits had been brought by them before the claims for labor had been barred. The respective claims, the amounts thereof and the time when established should have been proved, and then appellant should have shown that it paid off these laborers' liens at the request of the laborers, or of the owner, Ware. Sec. 6906 of Crawford & Moses' Digest gives laborers the right to a lien upon complying with the provisions of the act, which provisions of the act require that certain things be done before the benefits of the act can avail the laborers. See especially §§ 6917 and 6922. It will be observed that the statute (§ 6907) makes the lien assignable, but it does not make the right to perfect or claim a lien assignable. Such liens must be perfected before they can be transferred or assigned. Before the appellant could claim any right by subrogation to the liens of laborers, it would have to prove that these liens had been established in the manner required by law. Such liens are creatures of the statute. See *Royal Theatre* v. *Collins,* 102 Ark. 539; *Marvin* v. *Blytheville Water Co.,* 115 Ark. 230; *Daly* v. *Arkadelphia Milling Co.,* 124 Ark. 405. See also *Barnett Bros.* v. *Wright,* 116 Ark. 45.

Therefore appellant has failed to prove facts that were essential before it could avail itself of the above doctrine of subrogation, which is here invoked. The decree is in all things correct, and it is therefore affirmed.

SMITH, J., dissenting.