**STOWERS v. WHEAT et al. ***

**FRED T. LEY & CO., Inc., v. SAME.**

**WHEAT v. COMEAU et al.**

No. 7649.

Circuit Court of Appeals, Fifth Circuit.
May 31, 1935.

*Rehearing denied July 8, 1935.

J. Field Wardlaw, of West Palm Beach, Fla., for appellant.

Dan MacDougald, of Atlanta, Ga., E. T. McIlvaine, of Jacksonville, Fla., and Frank D. Upchurch, of St. Augustine, Fla., for appellees.

Henry P. Adair, of Jacksonville, Fla., for appellee and cross-appellant Wheat and others.

Joseph F. McPherson, of Miami, Fla., for appellee and cross-appellant Fred T. Ley & Co., Inc.

C. D. Blackwell, of West Palm Beach, Fla., for appellees A. J. Comeau and A. J. Comeau, Inc.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

When this case was here before,[1] only Ley, the contractor, was appealing from the decree awarding the trustee foreclosure with priority. Miss Stowers, though her interests were subjected to the foreclosure, did not appeal. Miss Stowers is the appellant on this appeal, and both trustee and contractor have filed cross-appeals. On this trial the questions raised on the former appeal, whether there was jurisdiction, and whether the contractor's lien on Comeau's interest primed the lien of the mortgage, were treated as settled. The contests were over questions not raised before, but brought into the case by amendment.

On the former trial Miss Stowers did not, as she did on this trial, contest the foreclosure as to her interests. On this trial she vigorously asserted that her interests, standing as surety for the mortgage, were released from the lien of the mortgage by fraudulent concealments and agreements of the principal and the trustee in the mortgage, resulting in diverting the bond funds and by their neglecting to file the mortgage promptly, thus letting in the contractor's lien. It is from the denial of this claim that she appeals. On the former trial the contractor did not, as he did on this trial, claim and undertake to charge a lien on Miss Stowers' interests. One of the grounds of his cross-appeal is the denial of this claim. On the former trial the trustee, relying on the primacy of the mortgage lien, did not, as he did on this trial, claim subrogation to and seek to foreclose the $32,000 first mortgage he took up with bond funds. On this trial, because the bond mortgage had been subrogated by our decision to the contractor's lien, the trustee sought, but was denied, subrogation. His cross-appeal is from that part of the decree.

On the former trial the trustee, relying on the primacy of the bond mort-

---

[1] Fred T. Ley & Co. v. Wheat, 64 F. (2d) 257.

gage, did not assert the priority over the contractor's lien of the rental lien on both lots, reserved in Stowers lease to Comeau. On this trial he asserted it and prevailed. Ley cross-appeals from this ruling.

A careful reading of the voluminous record, with the aid and in the light of the thorough and excellent briefs, convinces us that the decree was right, and should be affirmed, except as to the trustee's cross-appeal. While the claims made on the appeal and the cross-appeals are in their last analysis independent of each other, they are so related that a brief but comprehensive statement of the situation as a whole, as it is material to the appeal and cross-appeals, in supplement of that in our former opinion, will suffice to show at once as to each claim its grounds and its merits.

### Statement.

The property covered by the deed of trust is lots 15 and 16, block 13, of the city of West Palm Beach. Comeau owned lot No. 16; Miss Stowers, lot 15. By a 99-year lease, dated January 1, but executed March 26, and recorded May 11, 1925, she leased lot No. 15 to Comeau. This lease was made for the purpose of enabling Comeau to erect a building on the two lots. The provisions of this lease, which are regarded by the parties as pertinent to this appeal, are to be found in paragraphs 11, 12, 16, 29, 30, and 31.[2]

---

[2] Paragraph XI. "Lessee further agrees that Lessee will pay all liens of contractors, sub-contractors, mechanics, laborers, materialmen and other items of like character and will indemnify Lessor against all legal costs and charges, including counsel fees reasonably incurred in and about the defense of any suit in discharging the said premises or any part thereof from any liens, judgments or encumbrances caused or suffered by Lessee."

Paragraph XII. "The Lessee herein shall not have any authority to create any liens for labor or material upon the Lessor's interest in the above described property and all persons contracting with the Lessee for the destruction or removal of any building or for the erection, installation, alteration or repair of any building or other improvements upon the above described premises, and all material men, contractors, mechanics and laborers are hereby charged with notice that they must look to the Lessee and to the Lessee's interests only in the above described property to secure the payment of any bill for work done or material furnished during the rental period created by this lease."

Paragraph XVI. "The Lessee covenants with the Lessor that he will, within five years from the date hereof, erect and complete a fireproof building of permanent character on said land to cost not less than $50,000.00. For the purpose of securing notes, bonds or other evidences of indebtedness for the financing of said building, the said Lessor covenants and agrees to join with the Lessee in the execution of a mortgage or deed of trust of said lands, for a reasonable amount, provided, however, that the plans and specifications and detailed drawings of said building, and the plan of financing thereof and the mortgage or deed of trust shall first be submitted to and approved by Palm Beach Guaranty Company, a Florida corporation, with its principal place of business at West Palm Beach, Florida; and provided, further, that all the proceeds derived from the sale of said notes or bonds secured by said mortgage or deed of trust shall be expended in the construction of said building."

Paragraph XXIX. "In the event any building shall hereafter be constructed upon said premises and upon adjacent premises in such a manner that the part located upon the aforesaid premises cannot be set apart without loss or damage to the entire building, the Lessor herein shall have a lien on the rent from the entire building situate upon the above described premises and the premises adjacent thereto, for all rents accruing to her from time to time during the entire term of this lease and for the faithful performance of all of the covenants to be performed by the Lessee."

Paragraph XXX. "In the event the Lessor shall join with the Lessee in the execution of a mortgage or deed of trust upon the above described property, which mortgage or deed of trust shall also cover other lands and property owned by the Lessee, said mortgage or deed of trust shall stipulate that in the event of forfeiture or foreclosure thereunder all of the equity of the Lessee in and to said adjacent property, and in and to the leasehold upon the property hereby leased, shall first be exhausted and applied to the payment of said obligation before recourse can be had to the interest of the lessor in the property hereinabove described."

Paragraph XXXI. "It is hereby covenanted and agreed between the parties hereto that all covenants, conditions, agreements and undertakings in this lease contained shall extend to and be binding on the respective heirs, executors, administrators, successors and assigns of the

On March 27, 1925, the day after the execution of the lease, Comeau and Adair Realty & Trust Company entered into an underwriting agreement in which it was agreed that Comeau would construct an office building on the lots to cost not less than $650,000, the underwriter to sell the bonds, and to pay upon the order of Comeau a total net sum of $578,500, the balance to be retained as compensation and expenses. The Palm Beach Guaranty Company also signed the agreement. Thereafter, in May, 1925, Comeau and Adair Realty & Trust Company and Forrest Adair, the trustee, and Palm Beach Guaranty Company made a further agreement. This agreement provided, among other things not material here, that a $32,000 first mortgage on lot 16 should be paid out of the proceeds of the bonds. After this agreement had been made, the bond mortgage and deed of trust was duly signed and acknowledged by Miss Stowers on June 4, 1925. It did not include the proviso of clause XVI of the 99-year lease, that all proceeds derived from the sale of the bonds should be expended in the construction of the building. On the contrary, it provided: "Whereas the Owner has determined to issue nine hundred and fifty seven (957) of his first mortgage bonds aggregating the total sum of six hundred and fifty thousand ($650,000.00) dollars, said bonds when so issued to be negotiated, sold or pledged by the Owner for the purpose of raising money for his general purposes and for the erection and equipment of an office building on certain real estate held by him in the City of West Palm Beach, Florida, hereinafter described."

It did not provide, as clause XXX of the lease had provided, that the inter-est of Comeau in the property should first be sold.

Though executed by some of the parties to it before that date, the deed of trust, as more fully appears in our former opinion, was not finally executed and delivered until after June 16, when the lien of the contractor had already arisen against Comeau's interest. Among other things, the deed of trust contained these recitals: That it was made between Comeau, thereinafter called owner, joined by Miss Stowers, for the purposes thereinafter stated only, as parties of the first part, and Forrest Adair, trustee; that the owner has determined to issue mortgage bonds for the purpose of raising money for general purposes, and for the erection of an office building; that the owner mortgages lots 16 and 15, and covenants to pay the bonds secured by the mortgage. Article V, section 1, of the deed of trust provided: "The Owner covenants as to Lot 16 that he owns the property in fee simple, and the Owner and Frances Miriam Stowers covenant as to Lot 15 that the Owner is lawfully seized and possessed of a leasehold estate and has full power and authority to mortgage the fee simple title to the same; that this instrument constitutes a valid first lien against both parcels of land; that the Owner has the right and power and is lawfully authorized to mortgage and convey the same and that Owner, as to Lot 16, and Owner and Miss Stowers as to Lot 15, will warrant and defend the title to said parcels of realty against all persons."

Section 13 of article VIII, "Miscellaneous Provisions," set out in full in note,[3] declares that Miss Stowers had executed the 99-year lease for the purpose of enabling the owner to erect a

---

respective parties hereto the same as if they were in every case named and expressed, and the same shall be construed as covenants running with the land. Also that the terms "Lessor" and "Lessee" shall be construed in the singular or plural number according as they respectively represent one or more than one person."

[3] Section 13, art. VIII. "Miscellaneous Provisions. Conveyance of Fee. On the first day of January, 1925, Miss Frances (F. M. S.) Miriam Stowers executed a certain lease for the period of ninety nine years (99) to the Owner on Lot Fifteen (15) of Block Thirteen (13) of the City of West Palm Beach, said lot being more fully described in Paragraph Number Two (2) in the conveyance hereinbefore set out. Said lease was made for the purpose of enabling the Owner to erect a building on said lot and the adjoining lot, and said Miss Frances Miriam (F. M. S.) Stowers gave to the said Owner in said lease full power and authority to convey and mortgage the fee of said lot for the purpose of securing notes, bonds or other evidences of indebtedness for the financing of said building. For and in consideration of said lease and for the purpose of further securing the bond issue secured hereby and in consideration of the sum of (F. M. S.) Ten Dollars ($10.00) to

building on lot 15 and the adjoining lot, and that she gave the "owner" full power and authority to convey and mortgage the fee of lot No. 15 for the purpose of securing notes, bonds, etc. It further recites that she conveys the fee-simple estate for these purposes, and that she recognizes the right of Comeau to mortgage the land and make it a first lien against lot 15 superior to all other liens.

The concealments and diverting agreements Miss Stowers claims are with reference to the use of the proceeds of the bonds for commissions, the payment of interest and amortization and the purchase of the first mortgage. As to this, it will be noted that article 16 of the lease on which she relies does not provide, as she claims, that the full principal amount of the bonds would be used in the building. It provides that all of the proceeds derived from the sale of the notes or bonds shall be used in the construction of the building. A statement of the account for the building shows that the amount spent in connection with it by the underwriter was $732,949.61, of which $71,500 was commissions and expenses for selling the bonds at 90, $32,000 took up the first mortgage, $73,250 for interest and amortization of bonds during construction, the balance, $555,259, went directly into the building. It thus appears that at least $650,-000 went into the building, and to take up the first lien and discharge interest and sinking fund constituting a lien on the building. The additional money used for these purposes over that realized on the bonds was furnished by the Palm Beach Guaranty Company and the underwriter.

In connection with the making of the lease and the mortgage, and the construction of the building on the property, Mr. D. F. Dunkle, president of the Palm Beach Guaranty Company was the friend and adviser of Miss Stowers. He took part in the negotiations, was fully advised of the terms and provisions of all the agreements, and was consulted by and advised with Miss Stowers throughout. If anything that was done was not explained to her, this was not the fault of either the trustee or Comeau, but of her representative and adviser, who succeeded Miss Stowers' father as president of the Palm Beach Guaranty Company. From the voluminous record, no other conclusion can be gathered than that the building enterprise was a joint adventure in which, while Comeau took the lead, Miss Stowers was a directly interested party.

Proceeding now to a discussion of the claims the parties make, we take up first:

The Trustee's Claim to Subrogation to the $32,000 Mortgage.

When the bond mortgage was filed and the contractor's lien was fixed, the mortgage was a first lien on lot 16 ahead of both of these liens, and it was money of the bondholders · that took it up. Ley, citing Boley v. Daniel, 72 Fla. 121, 72 So. 644, L. R. A. 1917A, 734, claims that the trustee in taking up the mortgage was a volunteer, that the use of bond funds to take it up was a diversion from their purpose. He claims, too, that the right to subrogation, if it ever existed, is barred by the statutes of limitation and laches and lost by the action of

Miss Stowers in hand paid by the Owner, receipt of which is hereby acknowledged, and for other good and valuable considerations the said Frances Miriam Stowers does hereby convey the fee simple estate in and to the property hereinabove described in Paragraph Two in the conveyance for the purpose of securing the issue of bonds hereinabove referred to. In trust nevertheless, subject to all the covenants, conditions, and provisions, uses and trusts hereinbefore set forth for the protection of the bondholders, except that said Frances Miriam Stowers does not bind herself to perform any of the duties or acquit herself of any of the obligations imposed upon the Owner, except such as may be necessary to secure the issue of bonds as aforesaid. And the said Frances Miriam Stowers does hereby recognize and confirm the act of the said A. J. Comeau, Owner, in mortgaging and conveying the fee of said land as an exercise of the right and power granted by her to him in said lease. And the said Frances Miriam Stowers does hereby recognize and confirm the right of the said A. J. Comeau, Owner, to mortgage and convey the fee of said land as Owner for the purposes and according to the tenor and effect of this indenture, and does further acknowledge and declare this conveyance or mortgage to constitute a valid first lien against said realty and the improvements to be erected thereon superior to all other liens, and especially superior to any claim or title of the said Frances Miriam Stowers, her heirs or assigns, in and to the fee of said realty and said improvements."

the trustee in not asserting it until after our decision subordinating the bond mortgage to the contractor's lien.

■ We cannot agree with these views. Subrogation is perhaps the purest of equities. Young Men's Building Ass'n v. Ware, 158 Ark. 137, 249 S. W. 545; Godfrey v. Alcorn, 215 Ky. 465, 284 S. W. 1094, 51 A. L. R. 925; First National Bank v. Akerman, 70 Tex. 315, 8 S. W. 45; American Surety Co. v. Lewis State Bank (C. C. A.) 58 F.(2d) 559. It is applicable only in cases where the party invoking it has been required to pay a debt for which another is primarily answerable, and which in equity and good conscience that other ought to pay. Martin v. Federal Surety Co. (C. C. A.) 58 F.(2d) 79; New York Title & Mtg. Co. v. First National Bank (C. C. A.) 51 F.(2d) 485, 77 A. L. R. 1052; Federal Land Bank of Columbia v. Godwin, 107 Fla. 537, 136 So. 513, 145 So. 883; Pomeroy's Equity Jurisprudence, vol. 6, p. 1492. Under its operation, one who pays such a debt becomes, by equitable assignment, the owner of the lien, and equity will keep it alive for his benefit and protection against an intermediary and inferior lien. Pomeroy's Equity Jurisprudence, vol. 3, pp. 2420–2424; Sanders v. Pan-American Life Ins. Co. (C. C. A.) 44 F.(2d) 373; Forman v. First Nat. Bank, 76 Fla. 48, 79 So. 742; Wilkins v. Gibson, 113 Ga. 31, 38 S. E. 374, 84 Am. St. Rep. 204; First Ave. Coal & Lbr. Co. v. King, 193 Ala. 438, 69 So. 549; Platte Valley Cattle Co. v. Bosserman-Gates, etc., Co. (C. C. A.) 202 F. 692, 45 L. R. A. (N. S.) 1137. Subrogation is typically allowed when not to allow it will result in an unjust enrichment. To deny it here would be to put the contractor ahead of those not volunteers, whose money, on the theory that they were obtaining a first mortgage, took up the first mortgage which primed the contractor's lien. Typical cases for the assertion and allowance of subrogation are those in which what was thought to be, and was relied on as, security, turns out not to be such. It is an equity of need, and as such it was available to the trustee when, his mortgage, which he supposed was a first lien, having been subordinated to the contractor's lien, he amended to plead it. Rogers v. Hill, 289 U. S. 582, 53 S. Ct. 731, 77 L. Ed. 1385, 188 A. L. R. 744; Liberty

Nat. Bank v. Bear (C. C. A.) 4 F.(2d) 240; Commercial Credit Co. v. Continental Trust Co. (C. C. A.) 295 F. 615; Wilkins v. Gibson, 113 Ga. 31, 38 S. E. 374, 84 Am. St. Rep. 204. Typical cases in which it has been allowed are usury cases. Manning v. Christian (Tex. Com. App.) 81 S.W.(2d) 54; Burnhisel v. Firman, 22 Wall. 170, 22 L. Ed. 766; Mitchell v. Doggett, 1 Fla. 356, and homestead cases. Analogous in principle is the right in Texas to resort to the superior title after, in suits to foreclose vendor's lien notes, limitation is pleaded. Hamblen v. Folts, 70 Tex. 132, 7 S. W. 834; Elmendorf v. Beirne, 4 Tex. Civ. App. 188, 23 S. W. 315; Peters v. Clements, 46 Tex. 114.

■ We think it plain, then, that there is no merit in the claim the contractor makes, that the trustee may not have subrogation now because he did not invoke it until he needed it. We think, too, that nothing has occurred to now bar its assertion. It is the general rule that subrogation places the subrogee in the position of the creditor whose debt he pays. International & G. N. R. Co. v. Concrete Inv. Co. (Tex. Com. App.) 263 S. W. 265; Alexander v. Young (C. C. A.) 65 F.(2d) 752; Ingram v. Jones (C. C. A.) 47 F.(2d) 135; Gross v. Tierney (C. C. A.) 55 F.(2d) 578; Union Indemnity Co. v. Stevens (C. C. A.) 57 F.(2d) 839. Cf. Cain v. Bonner, 108 Tex. 399, 194 S. W. 1098, 3 A. L. R. 877. The mortgage would not have been barred if it had not been taken up. It may not be held to be barred when advanced by way of subrogation. Forman v. First Nat. Bank, 76 Fla. 48, 79 So. 742; McClure v. Johnson, 10 Okl. 663, 65 P. 103; Kinkead v. Ryan, 64 N. J. Eq. 454, 53 A. 1053; Smith v. Davis, 71 W. Va. 316, 76 S. E. 670, 43 L. R. A. (N. S.) 614; Hughes v. Howell, 152 Ala. 295, 44 So. 410. The cross-appeal of the trustee is sustained, and so much of the decree as denies subrogation is reversed, with directions to allow it.

### Miss Stowers' Appeal.

■ From the statement, it appears that Miss Stowers has not only pledged her property for the bonds, but has solemnly affirmed that Comeau had the right to execute the deed of trust as owner, for the purpose of raising moneys for general purposes, as well as for the con-

struction of the building, and that she, with Comeau, had guaranteed to the bondholders that the deed of trust is a first lien on both the properties. Her claim now to have her property released is in the teeth of her written agreement made with the trustee for the benefit of the bondholders and on the faith of which they purchased. In view of these declarations in the instruments securing the bonds, and of the purchase of the bonds in reliance on them, we think she may not now deny that her property stands as security. It seems quite clear that whatever her rights may be or have been as to Comeau in their joint adventure, however her property may have stood as to him or his property, it stood and stands as to the bondholders, not as surety, but as primarily obligated to them. Taking the lease and deed of trust together, and all that transpired in connection with their making and the underwriting of the building, it appears beyond question that the whole matter was a joint venture in which Miss Stowers was interested in obtaining her rents for the security of which she was granted a lien, not only on her own property and the building to be put on it, but on Comeau's property and the building on it.

■ It appears beyond question, we think, that she was interested as a principal in the transaction, and that as a principal she has pledged her property interests to its carrying out. But if it be conceded that her property stood and stands only as surety, we do not think anything was proven which would, as to the bondholders, at least, relieve it from the lien. Not only did she sign the instruments herself, not only did she have the advice and assistance of the Palm Beach Guaranty Company and its president in formulating and carrying the transaction out, so that she may not now claim that she was overreached or misled, but the proof shows that more money was expended on the improvements and for matters to which the bond money was properly applicable than was actually received from the sale of the bonds.

■ As to the failure to promptly record the mortgage, so that it would prime the contractor's lien, while this has resulted to her detriment, it has also resulted to the detriment of the bondholders, through no fault of theirs. Ruinously for her as the venture has turned out, it has also turned out ruinously for the bondholders whose subscriptions she invited by the deed of trust she authorized and issued. She stands as to them without legal or equitable ground to complain that having bought bonds upon her assurance that the mortgage constituted a first lien upon her property, they are insisting on her standing to her assurances.

The judgment as to her is affirmed.

### Ley's Claim to a Lien on Miss Stowers' Interest.

■ From the statement, it appears that though Miss Stowers did authorize the charging of her property with a bond mortgage, she expressly provided in her lease against its charging with a mechanics', builders', or laborers' lien. This provision, when she recorded her lease, she made a matter of record, so that when Ley commenced building, he was charged with the record notice of it. But Ley contends that under section 5355, Comp. Gen. Laws Florida 1927, Extent of Lien,[4] since Miss Stowers was interested in, and made the lease for, securing a building on her lot, the work he did must be regarded as having been done by her procurement. He cites as authority for this, Waring v. Bass, 76 Fla. 583, 80 So. 514; Taylor v. Ferroman, 103 Fla. 960, 139 So. 149; Stringfellow v. Coons, 57 Fla. 158, 49 So. 1019, 131 Am. St. Rep. 1089, from Florida, and Arctic Lumber Co. v. Borden (C. C. A.) 211 F. 50; Oregon Lbr. & Fuel Co. v. Nolan, 75 Or. 69, 143 P. 935, 146 P. 474; Seattle, etc., Co. v. Broadway, 156 Wash. 189, 286 P. 43, 1119; Curtin-Clark Hdw. Co. v. Churchill, 126 Mo. App. 462, 104 S. W. 476. In reply Miss Stowers and the trustee refer to the second clause of the same section.[5] They say that this section together with other sections of the Florida lien statutes,

---

[4] Section 5355, Comp. Gen. Laws of Florida, Extent of Lien. "If the labor or materials mentioned herein shall be done or furnished by the procurement of the owner of the property, or his agent, or of a person contracting with him to have the work done or material furnished, the lien shall be upon interest of such owner."

[5] "But if the labor be done or the materials furnished by the procurement of a person having less than the absolute interest, or of his agent, or of any person contracting with him to have the work done or materials furnished, the lien shall be only upon the limited interest of such person."

especially section 5380, the privity section, and the decisions construing them, leave no room for doubt that under a lease of the kind here one contracting with the lessee gets no lien against the interest of the owner, but only against that of the lessee. They cite Harper Lbr. Co. v. Teate, 98 Fla. 1055, 125 So. 21; Gulf Iron Works v. Gandy, 70 Fla. 306, 70 So. 366; Belote v. Chalifoux, 68 Fla. 537, 67 So. 108. They say that the decisions from other states are not controlling, for all of them, except the Missouri case, rest on statutes containing provisions construed as making the lessee under a lease of this kind the statutory agent for the owner, while the Missouri case is distinguished and explained in the later Missouri case of Dierks & Sons Lbr. Co. v. Morris, 170 Mo. App. 212, 156 S. W. 75.

In addition to the Florida cases cited in support of their view, they cite Cahill, etc., Co. v. Sayer, 72 Okl. 88, 178 P. 671; Lipscomb v. Hough, 52 App. D. C. 313, 286 F. 775; Atlas Portland Cement Co. v. Main Line Realty Corp., 112 Va. 7, 70 S. E. 536; and Woodson v. Wilson, 25 Ala. App. 241, 144 So. 122.

■ We think that cross-appellants have the best of it. That where the owner has definitely made it clear that his property is not to be bound, the owner, though interested ultimately in the building, is not, under the Florida statutes, to be regarded as having procured the work to be done, and that the lien extends only to the interest of the lessee who has procured its doing. We think it plain that where there is no privity, as there is not here, between the owner and the contractor, there can, under the Florida statutes, be no lien on the owner's interest.

The contractor's cross-appeal for a lien on Miss Stowers' interest is denied. The decree is affirmed as to it.

### Ley's Claim that His Lien Primes the Stowers' Rental Lien.

■ From the statement, it appears that Miss Stowers, as lessor of lot 15, holds a lien upon the rents accruing from the whole building, both that part of it on lot 15 and that on lot 16, and that this lien had attached and was of record before the contractor's lien became fixed. This lien upon the rents was secured by and was in effect a lien and charge up-on the building and properties. Cf. City of Dayton v. Allred, 123 Tex. 60, 68 S.W.(2d) 172, 176. When she mortgaged her reversion, the trustee in the mortgage took it for the benefit of the bondholders with all the rights pertaining to it, including those given in the lease for the security of the rents. When the contractor affixed his lien, it was affixed only on the interest which Comeau had in the property, an interest encumbered with the lien he had given Miss Stowers to secure her rents. Had the contractor foreclosed and bought the property in, he must have taken it subject to this lien for the rents. The fact that the deed of trust was not recorded in time to give it priority over the contractor's lien on lot 16 does not affect the priority Miss Stowers' lease gave her for her rents. When Ley put his lien on the property, it was already encumbered with a rental lien which primed his lien. Cahill, etc., Co. v. Sayer, 72 Okl. 88, 178 P. 671; Woodson v. Wilson, 25 Ala. App. 241, 144 So. 122. When there was default in the mortgage and the properties were taken into the possession of the receiver, all rents accruing and unpaid, as well as those thereafter accruing, were collectible by the receiver. New York Life Ins. Co. v. Fulton, etc., Corporation, 265 N. Y. 348, 193 N. E. 169; Central Trust Co. v. Chattanooga, etc., Co. (C. C. A.) 94 F. 275; Butt v. Ellett, 19 Wall. 544, 22 L. Ed. 183; Ex parte Owens, 100 S. C. 324, 84 S. E. 875.

■ For the same reason, that the right of subrogation to the $32,000 mortgage may now be asserted because the bond mortgage has been adjudged to be primed by the contractor's lien, the reason of need, so the lien for rents priming the contractor's lien, though not originally claimed in the suit, may now be asserted to overcome the primacy of the contractor's lien over the mortgage lien. Ley's cross-appeal on this point is denied. The decree is affirmed as to it.

It remains only to consider Ley's claim that there was prejudice to him in ordering the property sold in parcels.

■ We can see no present valid complaint against the decree on that score, for it is but prophecy as to how the ordered sale will actually work out. It is still within the power of the court below, and it is its duty, to have the sale conducted so as to make it bring the

most for all concerned. If in the confirmation proceedings it is made to appear that the sale as ordered did not bring a just price and will not if the property is sold that way again, the sale will not be confirmed, and a new sale will be ordered to bring about a better bid. As the matter now stands, it is not made to appear that the sale as ordered will cause any injury to any one. The whole matter is still within the court's control, and the point will be timely enough raised on appeal from the order of confirmation, if it is then made to appear that the manner of the sale has worked an injustice.

The decree, except as it denied the trustee subrogation, is affirmed. It is reversed as to that, with directions to amend the decree to allow it.

Affirmed in part, and reversed in part.