347 So.2d 736 (1977)
SOUTHERN COLONIAL MORTGAGE COMPANY, INC., and Colonial Mortgage Company of Indiana, Inc., Etc., Appellants,
v.
John E. MEDEIROS et al., Appellees.
No. 76-355.
District Court of Appeal of Florida, Fourth District.
June 17, 1977.
*737 William E. Sadowski, of Helliwell, Melrose & DeWolf, Miami, for appellants.
John F. Cosgrove, of Hall & Hedrick, Miami, for appellee Weil-McLain Co., Inc.
Paul A. Gore, of McCrory, Chappell, Brandt & Gore, P.A., Fort Lauderdale, for appellee Satellite Lighting Inc. and Morgan Whitman Supply Co.
Martin E. Segal, of Patton, Kanner, Nadeau, Segal, Zeller & LaPorte, Miami, for appellee Climatrol Corp.
ANSTEAD, Judge.
This appeal involves a contest as to priorities between mortgagees and mechanics lienholders on a condominium development. The appellants-mortgagees, Southern Colonial Mortgage Company, Inc. and Colonial Mortgage Company of Indiana, Inc., appeal a judgment in favor of the appellees-lienholders, Weil-McLain Company, Inc., Satellite Lighting, Inc., Morgan Whitman Supply Company, and Climatrol Corporation. We reverse.
The mortgagees extended loans to two purchasers of condominium apartments in Hidden Harbor condominium complex. Mortgages securing the loans were recorded on March 8 and April 5, 1974. Portions of the loans, $23,293.25 in one case and $24,441.94 in the other, were paid directly to the construction lender-mortgagee to secure releases of the construction mortgage which had been recorded on September 13, 1972.
A notice of commencement on the Hidden Harbor construction project was recorded on May 15, 1973. The lienholders recorded claims of liens on August 28, 1974, October 2, 1974, November 19, 1974, and January 14, 1975.
When the two condominium apartment purchasers defaulted, the mortgagees filed a foreclosure action and joined the lienholders as defendants. The trial court found that the lienholders' claims were superior to the mortgagees' on the basis that the mechanics' liens related back and attached as of the date of the recording of the notice of commencement.
The mortgagees assert that Section 713.13(5), Florida Statutes, prevents any mechanics' liens recorded more than one year after the recording of the notice of commencement from relating back to the notice of commencement as the date the lien attaches. Section 713.13(5) provides:
Unless otherwise provided in the notice of commencement or a new or amended notice of commencement, any notice of commencement heretofore or hereafter recorded shall not be effective as to any person acquiring title or any interest in real property from the owner or under him after one year from the date of recording the notice of commencement.
In this section a class of persons is designated to receive the benefit of the provisions thereof. That class consists of "any person acquiring title or any interest in real property from the owner or under him"; or if *738 read with the remaining words of the section, the class consists of "any person acquiring title or any interest in real property from the owner or under him after one year from the date of recording the notice of commencement." Whichever way the class is defined, the mortgagees are not included.
Under Florida law a mortgage does not convey title or create "any interest in real property."[1] The mortgagees have presented a very convincing argument that the legislature intended by enacting Section 713.13(5) to fix a date certain by which liens must be recorded or lose the right to relate back to the notice of commencement. However, while we believe this argument has merit, we cannot avoid the actual words used by the legislature and the plain legal meaning of those words.
As noted above, the class definition may also be limited to persons acquiring title or any interest in real property more than one year after the recording of the notice of commencement.[2] The mortgages, even if defined as "any interest in real property," were recorded within one year of the notice of commencement and are therefore excluded from the class benefited by Section 713.13(5).
For these reasons we hold that the mortgagees were not entitled to invoke Section 713.13(5) to gain priority over the mechanics' liens of the appellees, and the trial court's order is affirmed in this respect.
The mortgagees-appellants next claimed they were entitled to priority by reason of being subrogated to the rights of the construction mortgage to the extent that mortgage was paid by them. The construction mortgage predated the mechanics' liens, and the payments by the appellants-mortgagees did pay off in full the construction mortgage insofar as it encumbered each condominium unit involved.
This right of subrogation has been recognized in Florida:
The rule is academic that one who makes a loan to discharge a first mortgage, pursuant to an agreement with the mortgagor that he shall have a first mortgage on the same lands to secure it, the lendor will be subrogated to the rights of the first mortgagee, notwithstanding there is at the same time a second outstanding mortgage of which he (the lendor) is ignorant.[3]
The equitable result of such a rule was further stated by the Supreme Court:
The application of this rule works common justice to all; it prevents injury to appellant, who furnished the money to pay off the first mortgage in ignorance of the second; it gives appellant the benefit of its payment; carries out the intention of the parties; and leaves Alderman, the holder of the junior mortgage, in his original position. One of the first tests determining the application of this rule is whether or not subrogation to the place of the prior or retired lien puts the holder of the second lien in any worse position than if the prior lien had not been discharged.[4]
The foregoing principle of law assumes that the one paying is not a volunteer and has a sufficient interest to warrant the payment of another's debt.[5] The lienholders argue that the failure of the mortgagees to secure a formal assignment from the construction lender should bar subrogation. We agree that an assignment would be the better practice to insure the successor mortgagee's subrogation rights. However, under the *739 circumstances of this case and the equitable principles set out above we do not feel the failure to secure an assignment prevents subrogation. And by recognizing the mortgagees' subrogation rights, the lienholders are not placed in any worse position than if the construction mortgage had not been released.
The mortgagees also claim that this action is controlled by the judgment of the circuit court in a companion case rendered while this action was pending. However, we find that any defense available to the mortgagees as a result of the companion case was not properly raised in the trial court.
The mortgagees further claim that the mechanics' liens are barred or restricted by the provisions of Sections 711.20(1), (2), and (3), Florida Statutes (1975). These statutes provide:
(1) Subsequent to recording the declaration and while the property remains subject to the declaration, no liens of any nature shall thereafter arise or be created against the condominium property as a whole except with the unanimous consent of the unit owners. During such period liens may arise or be created only against the several condominium parcels.
(2) Labor performed or materials furnished to a unit shall not be the basis for the filing of a lien pursuant to the mechanics' lien law against the unit or condominium parcel of any unit owner not expressly consenting to or requesting the same. No labor performed or materials furnished to the common elements shall be the basis for a lien thereon, but if duly authorized by the association such labor or materials shall be deemed to be performed or furnished with the express consent of each unit owner and shall be the basis for the filing of a lien against all condominium parcels in the proportions for which the owners thereof are liable for common expenses.
(3) In the event a lien against two or more condominium parcels becomes effective each owner thereof may relieve his condominium parcel of the lien by payment of the proportionate amount attributable to his condominium parcel. Upon such payment it shall be the duty of the lienor to release the lien of record for such condominium parcel.
We think the foregoing subsections apply to all claims of lien recorded after the recordation of the declaration of condominium unless the lien is for work done or for materials furnished before the recordation of the declaration of condominium and the lien relates back to a notice of commencement that predates the declaration of condominium. This construction would enable this particular condominium statute to exist without conflicting with the mechanics' lien law. It would also appear to give meaning to the terms "arise or be created" as used in Section 711.20(1). Liens which are timely recorded after the recordation of the declaration of condominium and which relate back to a prior notice of commencement "arise or [are] created" prior to the recordation of the declaration of condominium. Thus, such liens are not precluded by Section 711.20(1).
Since there is no condominium association in existence prior to the recording of the declaration of condominium, Section 711.20(1) would not appear to refer to a claim of lien for work done or materials furnished to the common elements prior to recordation of the declaration of condominium.
For the foregoing reasons, in our opinion one improving real property prior to the recording of a declaration of condominium is entitled to enforce a claim of lien against the entire property perfected after the declaration is recorded, if the claim of lien relates back to a notice of commencement that was recorded before the declaration of condominium, even though the claim of lien is recorded after the date the declaration of condominium is recorded. In enforcing a perfected claim of lien against the entire property, the artisan can join the unit owners as a class via the condominium association. See Section 711.12(2), Florida Statutes (1975). However, the most equitable result would be accomplished by making each condominium unit liable only for its *740 pro rata share based upon its pro rata interest in the condominium property as set forth in the declaration of condominium. Those units which did not pay their pro rata share could then be sold to satisfy the balance of any unpaid lien.
For the foregoing reasons the judgment of the trial court is reversed with directions that judgment be entered in accordance with the terms of this opinion.
CROSS, J., concurs.
LETTS, J., dissenting in part.
LETTS, Judge, dissenting in part.
I agree with the foregoing except that I disagree that section 713.13(5) of the Florida Statutes (1975), does not apply to mortgages despite the recent Second District Court of Appeals decision in United of Florida, Inc., v. Illini Federal Savings and Loan Association and Lyman Savings and Loan Association, 341 So.2d 793 (opinion filed January 12, 1977).
The Second District ruling is based upon the statutory phrase in said sub paragraph 5, above quoted, which indicates that a notice of commencement, over one year old, shall not continue to be effective ". . as to any person acquiring title or any interest in real property from the owner or under him... ." Interpreting this quoted phrase, the Second District opined that a mortgage is not "an interest in land," and that the phrase "any interest in real property from the owner or under him," means identically the same thing as "an interest in land." Thus, the Second District concluded that a notice of commencement remained effective as to any potential, or actual, mortgage lenders, regardless of the fact that in excess of one year had elapsed since the notice of commencement was recorded.
I would agree that the Florida law is well established that a mortgagee does not have "an estate or interest in mortgaged lands by virtue of [his] mortgage, but is merely the owner of a chose in action creating a lien on the property." Shavers v. Duval County, 73 So.2d 684, 687 (Fla. 1954). Said holding, in turn, cited an earlier decision, Waldock v. Iba, 114 Fla. 786, 153 So. 915 (Fla. 1934), wherein the court held that "a mortgage does not create AN INTEREST IN LAND." (Emphasis supplied).
I cannot agree, however, that a mortgage does not constitute the acquiring of ". . any interest in real property from the owner or under him ... ." under the intent of Section 713.13(5), for it is self evident that the holder of a mortgage lien on any property has some considerable interest in it, and I am confident that the statutory language employed never envisaged that the phrase "... any interest in real property from the owner or under him" under Chapter 713 would be found to be a synonym for the legal phrase of art "AN interest in LAND."
I am persuaded to this point of view by three factors:
First, the Second District, in its recent ruling in the United of Florida decision, supra, cited two Florida Supreme Court cases to substantiate its conclusion; however, neither of the cases relied on concluded that a mortgage did not constitute "ANY interest in REAL PROPERTY from the owner or under him." In the Shavers case, supra, the Court held that a mortgage was not "AN estate or INTEREST IN mortgaged LANDS" and for authority, cited, in turn, the Waldock case, supra, in which the phrase used was, "A mortgage does not create AN INTEREST IN LAND." (Emphasis supplied). It is obvious, therefore, that it is these last four particular words, spoken together, that give rise to the special legal meaning attached thereto. There is no reason, therefore, that the phrase "any interest in real property from the owner or under him" must receive the identical interpretation under Section 713 of the Florida Statutes. In much the same way, by analogy, however exaggerated, we come across the phrase in Black's Law Dictionary which defines the phrase "criminal conversation" as defilement of the marriage bed, or adultery; however, if the legislature were to draft a bill which included the phrase "two or more criminals conversing *741 together," there would be no reason to have to conclusively presume that the words could refer only to a meretricious relationship.
My second reason for disagreeing is that it is most inconsistent to hold that Section 713.13(5) would permit lienors to retain superior rights, vis-a-vis mortgage lenders, after the passage of one year, and yet have those very same rights, at the end of one year, become inferior to actual purchasers, or for that matter, long term lessees under a leasehold interest. If that were the case, then there is no necessity in the Statute to include the wording "... any interest in real property from the owner or under him" and it could simply be omitted. Thus Subsection (5) would simply state "any notice of commencement ... shall not be effective as to any person acquiring title ... from the owner or under him." Accordingly, to include the additional wording must have had some purpose. To suggest that the legislature intended that a property owner could not defeat the priority of mechanics lien holders by mortgaging his property, but could do so by the simple act of selling or leasing it to those who, in turn, could about face and secure exactly the same financing, is, to say the least, unlikely. In fact, it is such a "laundered out" result to which the Second District took strong exception in the United of Florida case, supra, when it referred to the inability of a mortgage lender to assign its priority.
Finally, it is noted that one of my colleagues in the Second District, specially concurred in the United of Florida case, supra, and apparently did so for reasons similar to those expressed herein. I am aware that it is not normally the function of an appellate court to explain away what the legislature might have had in mind, but on the other hand, our Supreme Court has recognized that:
Where obviously a definition is contrary to, or destructive of, the legislative intent of an act of which it is a part, it is not sacrosanct but is subject to statutory construction in relation to conflicting provisions ... Ervin v. Capital Weekly Post, 97 So.2d 464, 467 (Fla. 1957).
It is unquestioned that the language employed in 713.13(5) is unfortunate and steps should be taken to clarify it, for even the twelve month time provision is susceptible to diverse reading. For example, under the wording employed, what happens after the twelve month period is exceeded, to a purchase made before that period is over. The Second District ruling in United of Florida, Inc. (supra) would appear to give the mechanics lienors preference, even over a buyer, in that instance. I cannot believe such was ever intended.
NOTES
[1] United of Florida, Inc. v. Illini Federal Savings & Loan Association, 341 So.2d 793 (Fla.2d DCA 1977).
[2] Id.
[3] Federal Land Bank of Columbia v. Godwin, 107 Fla. 537, 145 So. 883, at 885 (1933). Also see Schilling v. Bank of Sulphur Springs, 109 Fla. 181, 147 So. 218 (1933); Forman v. First Nat. Bank, 76 Fla. 48, 79 So. 742 (1918); Fortenberry v. Mandell, 271 So.2d 170 (Fla.4th DCA 1972); G. Glenn, Glenn on Mortgages § 340 (1943). But compare Boley v. Daniel, 72 Fla. 121, 72 So. 644 (1916).
[4] Federal Land Bank of Columbia v. Godwin, supra, 145 So. at 886.
[5] Furlong v. Leybourne, 138 So.2d 352 (Fla.3d DCA 1962).