599 So.2d 1004 (1992)
SUNSHINE MEADOWS CONDOMINIUM ASSOCIATION, INC., and Prime Bank, Appellants,
v.
BANK ONE, DAYTON, N.A., a National Banking Association, et al., Appellees.
No. 90-0728.
District Court of Appeal of Florida, Fourth District.
April 22, 1992.
Rehearing Denied June 30, 1992.
*1005 Peter A. Sachs and Mark B. Kleinfeld of Jones, Foster, Johnson & Stubbs, P.A., West Palm Beach, for appellant-Sunshine Meadows Condominium Ass'n, Inc., and George P. Ord of Alley, Maass, Rogers & Lindsay, P.A., Palm Beach, for appellant-Prime Bank.
Daniel S. Rosenbaum of Becker & Poliakoff, P.A., West Palm Beach, for appellees.
WARNER, Judge.
A condominium association appeals a partial summary judgment granting foreclosure on all condominium units in a phase condominium based upon a defaulted mortgage on property comprising common elements. The mortgage holder made the association a defendant representing the class of unit owners under Florida Rule of Civil Procedure 1.221. The association claims that the mortgagee cannot foreclose on the individual condominium units based upon a mortgage secured only by the common elements. We agree and reverse.
Sunshine Meadows is a condominium equestrian center which includes stalls, paddocks and other facilities for horses. A condominium unit consists of ten stalls, an office, rest room and storage room. The project was developed as a phase condominium. The declaration of condominium was recorded in June of 1983 and complied with the provisions of Section 718.403, Florida Statutes (1983), regarding phase condominiums. The development anticipated the construction of twelve phases, each phase being described in the declaration. In compliance with Section 718.403(1), Florida Statutes (1983), requiring the declaration to describe the impact which the addition of subsequent phases will have on the initial phase, the declaration stated, "The impact of completion of future phases upon Phase I will be an increased use of the common elements located in Phase I... ." Pursuant to the submission of Phase I to the condominium, the developer conveyed units within the condominium association to various unit owners who also gave mortgages to some of the appellants herein.
In June of 1984 the developer executed a note and mortgage to appellee Bank One covering 1.43 acres of property in proposed Phase II to secure a loan of $400,000 for the construction of groom's quarters. These were to be part of the common elements intended to be submitted with Phase II. The mortgage did not cover any property which would become a condominium unit in Phase II. In 1987 the developer amended the original declaration of condominium to include the property in Phases II, III, and IV, including the property covered by the mortgage. Bank One executed a consent to the amendment and the inclusion of the property in the condominium. Several months later, after the developer defaulted on the loan, the bank filed a foreclosure action against the condominium association as representative of all of the unit owners requesting foreclosure as to the entire condominium property, described in metes and bounds, including the interest of each unit owner. It claimed that as a matter of law when the property covered by the mortgage was submitted to condominium ownership as part of Phase II, its mortgage thereby encumbered not only the specifically described common property but also each unit in all phases of the condominium, since the common property became an appurtenance to each unit. Bank One also claimed that its mortgage was superior to various other mortgage holders on individual condominium units. Bank One moved for partial summary judgment which the court granted, determining that appellee's mortgage lien was superior to all of the unit owners and other mortgagees. We conclude that the Declaration of Condominium, *1006 statutes, and law of mortgages are contrary to the bank's position.
Prior to Bank One's loan, the developer had recorded the Declaration of Condominium which included phase one and the outline of facilities to be included in each subsequent phase. The Declaration provided that the fee simple title to each condominium parcel would include the unit and a fractional undivided interest in the common elements. It further provided that "any attempts to separate the fee simple title to a unit from the undivided interest in the common elements and/or Condominium Property appurtenant to such Unit shall be null and void." Nowhere in any provision of the Declaration would any reader have been alerted to any potential future encumbrance on common elements. The opposite conclusion may be drawn from the documents. For instance, in the Declaration's provisions regarding insurance in case of a casualty loss to common elements, there is no provision in the distribution of insurance proceeds to a mortgagee of common elements. In addition, as noted above there is no mention in the Declaration's Phase Impact Statement of a potential obligation to pay off a construction mortgage on common elements in future phases.
The Declaration also incorporates the condominium law in its provisions. Section 718.104(3), Florida Statutes (1983), made applicable to phase condominiums by section 718.403(1), requires all mortgagees either to join in the execution of the Declaration, consent to it, or enter an agreement subordinating the mortgage interest to the Declaration. However, as section 718.104(6) mandates that any person who consents to the execution of a Declaration subjects his interest in the condominium property to the provisions of the declaration, there is little practical difference in the three modes. In all events the interest of the mortgagee is subject to the declaration when it consents to the Declaration.
The statute also provides in section 718.107(2) that "[t]he share in the common elements appurtenant to a unit cannot be conveyed or encumbered except together with the unit." With respect to the imposition of liens on condominium property, section 718.121(1), Florida Statutes, states:
Subsequent to recording the declaration and while the property remains subject to the declaration, no liens of any nature are valid against the condominium property as a whole except with the unanimous consent of the unit owners. During this period, liens may arise or be created only against individual condominium parcels.
Summarizing, the Declaration of Condominium did not reveal to prospective purchasers that there was any potential future obligation to pay a mortgage incurred on common elements of future phases. When Bank One consented to the submission of its mortgaged property to the Declaration of Condominium it made its interest subject to the Declaration and, by incorporation, the condominium statute. Therefore, while the property was subject to the Declaration of Condominium, no lien of any nature was valid against the condominium property as a whole, even though the bank has used the legal description of the property as a whole to foreclose its alleged mortgage lien. This is specifically prohibited by the Condominium Act.
Bank One's argument is very appealing to a lending institution. It can loan on a small piece of property and subsequently collect on a much larger piece of property if the mortgaged property is included in a condominium as a common element, without the consent of the owners of the condominium units. Such a situation would be ripe for exploitation by unscrupulous developers and reckless lenders. Common elements could be over-mortgaged to the benefit of the developer's personal fortune. Then when the common elements are incorporated in a subsequent phase of a condominium, previous owners would face the prospect of having to pay it off or suffer the loss of their condominium unit. While the bank argues that this is the risk anyone buying into a phased condominium project takes, we cannot agree. If it were, it would make phased development so risky for the purchaser as to render it unmarketable. The risk the purchasers in phased *1007 condominiums take is that the remaining phases may not be completed and amenities thereon may not be included in the condominium, not that they may be liable for future obligations of completely unknown amounts. Furthermore, if the impact of the addition of future phases was to incur an obligation on the phase one owners to pay off obligations on improvements in subsequent phases, then surely notice of that is required in the impact statement required in Section 718.403(1), Florida Statutes.
Furthermore, based on the law of mortgages, appellee's argument must fail. A lien of a mortgage covers only that property which is included in its description. See § 697.02, Fla. Stat. (1991); Caples v. Taliaferro, 144 Fla. 1, 197 So. 861 (1940); Alabama-Florida Co. v. Mays, 111 Fla. 100, 149 So. 61 (1933). The mortgage in this case covered only the 1.43 acres comprising the grooms quarters. Nothing in the description of the mortgage evidenced an intent to include future properties, nor does it even refer to the potential incorporation of this property in a phased condominium. Bank One also asserts that it would be inequitable not to allow it to foreclose its mortgage, since the condominium unit owners are presumably enjoying the benefits of the improvement. However, the Bank's equitable lien theory also fails. Equitable liens arise from either (1) a written contract which shows an intention to charge some particular property with a debt; or (2) when a court determines that out of considerations of right and justice as applied to the parties under the particular facts a lien should exist. 34 Fla.Jur.2d Liens § 7 (1982). Alternative one does not apply because there is no express agreement between the unit owners and the Bank for the condominium units to stand as security for the debt. Alternative two does not apply because there is no fraud, mistake or misrepresentation which this lender relied on in order to form the "considerations of right and justice" necessary for its imposition. See Rosen v. Fierro, 340 So.2d 955 (Fla.3d DCA 1976). In fact, only the Bank was in a position to protect its lien. It could have refused to consent to the inclusion of Phase II in the condominium until its lien was paid off. Or it could have required the developer to subject the condominium units in Phase II to the terms of its mortgage and required release prices upon their sale, so that the lien of the mortgage could have been effective against the units in Phase II. Instead, it consented to the addition of the property to the condominium with the knowledge that the property would become an appurtenance to each condominium unit but that its mortgage did not cover any of the condominium units. It appears that it was perfectly capable of protecting its own interest and failed to do so. On the other hand, to accept the Bank's reasoning, there would be absolutely nothing that unit owners could do to protect their interests short of simply refusing to purchase in a phased condominium. We do not think that was intended by the Condominium Act either expressly or impliedly. Therefore, we hold that the Bank One is not entitled to foreclose its interest against the condominium units, nor as to the 1.43 acres itself so long as the property remains subject to the Declaration of Condominium.
As can be seen by the dearth of cases cited in our opinion, this is a case of first impression. There are simply no cases dealing with the relationship of development or construction mortgages to the unit owners once the property covered by the condominium is submitted to the declaration. Because the condominium development industry is a vital part of the Florida economy and is affected by the ability of lending institutions to loan money for such developments, we deem this a question of great public importance and certify it to the supreme court:
MAY A LENDER WHO CONSENTS TO THE ADDITION OF PROPERTY COVERED BY ITS MORTGAGE AS A CONDOMINIUM COMMON ELEMENT IN A PHASED CONDOMINIUM FORECLOSE ITS MORTGAGE AS TO ALL INDIVIDUAL UNIT OWNERS OF ALL PHASES OF THE CONDOMINIUM, INCLUDING PRIOR PHASES, BECAUSE THE COMMON ELEMENTS BECOME *1008 AN APPURTENANCE TO EACH UNIT UPON THE DEVELOPER'S SUBMISSION OF THE PROPERTY TO THE PHASED CONDOMINIUM?
DOWNEY, J., concurs.
FARMER, J., dissents with opinion.
FARMER, Judge, dissenting.
The court's conclusion is so unequivocal, so free from doubt, that it may seem foolhardy to disagree with it. And the complexities of obscure condominium and real property law may also lead a more prudent person than I to quietly concur. Still, I cannot shake off a nagging feeling that we ourselves commit substantial error in reversing the trial court's determination on liability in favor of this foreclosing mortgagee.
My (admittedly simplistic) analysis is this. When all those prospective buyers in phase I contemplated the proposed title they would get from their putative seller, the land records told them that this was a phase condominium and that part of a future phase was already encumbered with a mortgage on what could become common elements some day. Their decision was thus whether to buy and run the risk that the developer (mortgagor) would not pay the mortgage and, upon incorporation of the future phase, that their own interest in the condominium would be charged as security for that debt.
Charging the owner of an interest in property with the obligation to pay a debt secured by that property is essentially tied to the concept of prior notice of that security obligation. If the owner knew, or is deemed to know, of that security obligation when he acquired that interest, or if he consented to it after he acquired it, then there is nothing unfair about the charge. If, on the other hand, the owner did not know and cannot be deemed to know of that security obligation, then it is unfair to charge him with it. The public records are designed to facilitate proof of the required knowledge.
The right to hold and enjoy property was thought by our forebears to be so important that, along with life and liberty, it was given organic protection in our law. The law of property thus abhors forfeitures of property interests arising by operation of law other than as intended by the affected parties when the interests were created. A mortgage on real property constitutes property, as much as unconditional title does.
The conclusion that this mortgagee's acquiescence in the incorporation of the mortgaged property into the condominium amounted to a willing forfeiture of the mortgage itself smacks, to me, of a "gotcha". We usually think of waivers, which is what this is, as an intentional relinquishment of a known right or privilege. Consequently, we usually do not look for waivers in merely arguably negligent conduct, unless the result is unambiguously dictated by definitive prior precedent making a failure to act or to act improperly a legal waiver or abandonment of some prior position or claim of right.
Here, by the court's own admission, no prior precedent in Florida law makes what this mortgagee did an abandonment of a valid mortgage. Instead, Florida law is entirely silent on this precise situation, and well established principles have never been previously applied to this circumstance. At the same time, it is entirely reasonable for a trial judge to determine  but perhaps not on summary judgment  that as between the negligent purchasers in the prior phase, as well as the later ones, and the negligent mortgagee who acquiesced in incorporation, that the purchasers were more negligent than the mortgagee and that it is thus not inequitable that they should suffer foreclosure.
I cannot agree that the documents available to a phase I buyer would not have given reasonable notice of a possible future encumbrance on future common elements if later phases were actually incorporated. To reach that conclusion, it is necessary to approve a buyer's title lawyer ignoring the presence of that previously recorded mortgage. It is to treat that mortgage as nonexistent.
Nor can I subscribe to the notion that an actual buyer who closed on his phase I purchase, knowing or being charged with knowing of the mortgage, cannot be *1009 deemed to have consented to the mortgage by the simple act of closing and accepting his seller's deed with the mortgage in the background. In fact, the court fails entirely to explain why that act is not deemed an acceptance of that mortgage and, instead, waves off the subject with the simple assertion that there is no consent here.
I too worry about exploitation of innocent consumer buyers of residential property by unscrupulous people calling themselves developers. The predicament of such victims calls upon well established law and appeals to the full extent of our judicial powers. But these are not ordinary residential home buyers, unless it is now commonplace for buyers of condominium units used as principal residences to acquire with their purchase 10 horse stalls and an office, the use of paddock areas and a race track, and to live in a fully developed "equestrian center." Nor is there the slightest hint anywhere in this record of misconduct by anyone, or that the property was "over-mortgaged" (whatever that means).
If a developer wants to attempt to market a condominium subject to a future phase having property with a mortgage on it, the fact that prospective purchasers do not buy is of no concern. This kind of product defect is relevant only to the uncertainties of the marketplace. It should have nothing to do with whether a prospective buyer, who buys with knowledge of the mortgage, can later be held to the consequences of the fact known. The purpose of the Condominium Act is not to encourage people to buy condominiums, so much as it is to protect the reasonable expectations of the parties, who are charged with knowing what is in the public records for them to know before they buy.
I fear I must dissent.[1]
NOTES
[1] I am not comfortable with certifying any question of great public importance. For one thing, I have serious doubts that the circumstances of this case are replicable. Another problem is in finding "great public importance" in a case involving abstruse questions of parties' expectations in investing in an equestrian center. I do agree, however, that the precise question framed by the court is a fair presentation of the issue here.