HARDING, Justice.
We have for review Sunshine Meadows Condominium Association, Inc. v. Bank One, Dayton, N.A., 599 So.2d 1004, 1007-08 (Fla. 4th DCA 1992), in which the Fourth District Court of Appeal certified the following question as one of great public importance:
MAY A LENDER WHO CONSENTS TO THE ADDITION OF PROPERTY COVERED BY ITS MORTGAGE AS A CONDOMINIUM COMMON ELEMENT IN A PHASED CONDOMINIUM FORECLOSE ITS MORTGAGE AS TO ALL INDIVIDUAL UNIT OWNERS OF ALL PHASES OF THE CONDOMINIUM, INCLUDING PRIOR PHASES, BECAUSE THE COMMON ELEMENTS BECOME AN APPURTENANCE TO EACH UNIT UPON THE DEVELOPER’S SUBMISSION OF THE PROPERTY TO THE PHASED CONDOMINIUM?
We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution, *1334 and we answer the certified question in the negative.
Sunshine Meadows is a condominium equestrian center, including stalls, paddocks, and other facilities for horses. Each condominium unit consists of ten stalls, an office, a restroom, and a storage room. The project was developed as a phase condominium and complied with the provisions of section 718.-403, Florida Statutes (1983), the statute governing phase condominiums. As required by section 718.403(1),[1] the declaration of condominium recorded in June 1983 stated that the “impact of completion of future phases upon Phase I will be an increased use of the common elements located in Phase I.” The developer conveyed units within the condominium association to various unit owners, who also gave mortgages to various lenders including some of the respondents in this case.
In June 1984, the developer executed a note and mortgage to Bank One covering I.43 acres of property in proposed Phase II. The note and mortgage secured a $400,000 loan for the construction of grooms’ quarters, which were to be part of the common elements intended to be submitted with Phase II. The developer amended the original declaration of condominium in 1987 to include the property in Phases II, III, and IV, including the property covered by the mortgage. Bank One executed a consent to the amendment and to the inclusion of the mortgaged property in the condominium.
When the developer defaulted on the loan, Bank One filed a foreclosure action against the condominium association as the representative of the unit owners. Bank One requested foreclosure as to the entire condominium property, including the. interest of each unit owner. Bank One claimed that when the property covered by the mortgage was submitted to condominium ownership as part of Phase II, the mortgage encumbered not only the specifically described common property but also each unit in all phases of the condominium because the common property became an appurtenance to each unit. Bank One also claimed that its mortgage was superior to various other mortgage holders on individual condominium units. The trial court granted partial summary judgment to Bank One, finding that its mortgage lien was superior to all of the unit owners and other mortgagees.
On appeal, the district court determined that Bank One was not entitled to foreclose its interest against the condominium units, nor as to the 1.43 acres so long as that property remains subject to the declaration of condominium. 599 So.2d at 1007. Accordingly, the district court reversed the partial summary judgment for Bank One, and certified the question to this Court.
Bank One argues that under section 718.403 a mortgage lien on property which becomes a part of the common elements of a condominium development also extends to the individual condominium units. We do not agree. Instead, we agree with the district court below that “the Declaration of Condominium, statutes, and law of mortgages are contrary to the bank’s position.” 599 So.2d at 1006.
The declaration of condominium that was recorded in 1983 included Phase I and an outline of the facilities to be included in each subsequent phase. Bank One argues that article II of the declaration[2] put prospective purchasers on notice that future phases might be mortgaged. Even if this provision indicated that land in future phases might be mortgaged, it falls far short of putting prospective purchasers on notice that a mortgage lien exists on an individual unit. Nor did any of the other provisions in the declaration alert prospective buyers as to any potential future encumbrances on the common ele *1335 ments. The declaration provided that the fee simple title to each condominium parcel would include both the unit and an undivided interest in the common elements, that any attempt to separate title to a unit from the common elements appurtenant to that unit would be “null and void,” and that the common elements shall remain undivided so long as the condominium exists. Moreover, as noted above, the phase impact statement stated that the impact of completion of future phases upon Phase I would be the increased use of common elements located there. This impact statement contained no notice of a potential obligation for construction mortgages on common elements in future phases.
The declaration of condominium also incorporated Florida’s condominium law in its provisions. Under section 718.104(3), Florida Statutes (1983), anyone having any record interest in a mortgage encumbering land being submitted to condominium ownership must either join in the execution of the declaration, execute a consent to the declaration, or enter into an agreement subordinating that mortgage interest to the declaration. Section 718.104(6), Florida Statutes (1983), further provides that “[a] person who joins in, or consents to the execution of, a declaration subjects his interest in the condominium property to the provisions of the declaration.”
When the declaration of condominium was amended in 1987, Bank One executed a written consent to that amendment. The amendment provided that Phases II and III, including all condominium units and common elements either erected or to be erected thereon, were being submitted “under the Declaration and all exhibits attached thereto.” The common elements of Phase II included the property mortgaged by Bank One. By consenting to the amendment, Bank One agreed that its interest in the Phase II common element property would be subject to the declaration of condominium and, in turn, to the condominium laws which were incorporated in the declaration.
Florida condominium law provides that “while the property remains subject to the declaration, no liens of any nature are valid against the condominium property as a whole except with the unanimous consent of the unit oiuners. During this period, liens may arise or be created only against individual condominium parcels.” § 718.121(1), Fla. Stat. (1983) (emphasis added). The unit owners in this case were not even given notice of any potential future obligation to pay a mortgage incurred on common elements of future phases, much less did the owners consent to a lien against the condominium property as a whole.
As the district court noted, the law of mortgages is also contrary to Bank One’s contention that its mortgage encumbers not only the specifically described common property but also each unit in all phases of the condominium. 599 So.2d at 1007. A mortgage is “a specific lien on the property therein described.” § 697.02, Fla.Stat. (1983). The mortgage in this case covered only the 1.43 acres comprising the grooms’ quarters. The description of the mortgage does not mention that the mortgaged property will be incorporated in a phased condominium; nor is there any evidence of an intent to include future condominium units as collateral for the loan.
Thus, based upon the declaration of condominium, Florida condominium law, and the law of mortgages, we find that Bank One is not entitled to foreclose its lien against the condominium units. In addition, we agree with the district court that Bank One cannot foreclose its lien even against the 1.43 acres covered by the mortgage as long as that property remains subject to the declaration of condominium. As discussed above, by consenting to the 1987 amendment to the declaration, Bank One subjected its mortgage interest in the condominium property to the declaration, including the provisions that prohibit separating the title to a unit from the common elements and require the common elements to remain undivided so long as the condominium exists.
We do not agree with Bank One’s assertion that this result is inequitable. 'Nothing in section 718.104 forces a mortgagee to submit a mortgage interest to the declaration of condominium. If a mortgagee determines that it would impair its security interest to submit the mortgaged land to condominium *1336 ownership, then the mortgagee can withhold consent in order to require full payment of the mortgage or to obtain some alternate security or financing arrangement. An inter-office memorandum, dated two years before Bank One consented to the submission of the mortgaged property to condominium ownership, reflects that Bank One was aware that its mortgage was on the grooms’ quarters, a common element that was “probably not marketable,” and that the mortgage was to be paid from the sale of condominium units over which it had “no control.” Thus, Bank One was aware of the situation when it consented to the mortgaged property becoming part of the condominium. Bank One could have protected its lien in a number of ways: by withholding its consent to the submission of the property to condominium ownership; by requiring the developer to subject subsequent condominium units to the terms of the mortgage and requiring release prices upon their sale; or by requiring substitute collateral for the loan.
Accordingly, we answer the certified question in the negative and approve the decision below.
It is so ordered.
OVERTON, SHAW and KOGAN, JJ., and McDONALD, Senior Justice, concur.
GRIMES, C.J., concurs with an opinion.

. Section 718.403(1), Florida Statutes (1983), provides:
A developer may develop a condominium in phases, if the original declaration of condominium submitting the initial phase to condominium ownership provides for and describes in detail all anticipated phases; the impact, if any, which the completion of subsequent phases would have upon the initial phase; and the time period within which each phase must be completed.

. Article II provides that the land "for the purpose of financing, constructing and completing the improvements thereon is subdivided into twelve (12) phases."