DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**GREEN TERRACE E33, LLC,**
Appellant,

v.

**JOSEPH ABRUZZO,** as Clerk and Comptroller for Palm Beach County,
and **CITY OF WEST PALM BEACH,**
Appellees.

No. 4D2022-2495

[February 21, 2024]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Richard L. Oftedal, Senior Judge; L.T. Case No. 502019CA003553.

Deborah Marks of Deborah Marks, PLLC, Miami, for appellant.

Kimberly L. Rothenburg of the Office of the City Attorney, City of West Palm Beach, West Palm Beach, for appellee City of West Palm Beach.

No brief filed for appellee Joseph Abruzzo.

FORST, J.

Appellant Green Terrace E33, LLC ("Appellant") appeals the trial court's grant of partial summary judgment in favor of appellee City of West Palm Beach ("the City"). The City sought a portion of the surplus from a tax deed sale of an individual condominium unit ("the Condo Unit") within Green Terrace Phase II, a condominium ("Green Terrace"). The trial court found the City was entitled to a distribution from the surplus because the City's code enforcement lien against Green Terrace's common elements was a lien "against the property" under section 197.582(2)(a), Florida Statutes (2022), with each unit bearing a proportionate share. We disagree and reverse.

Per the City's argument that the lien was against Green Terrace's common elements, the code enforcement lien would violate section 718.121(1), Florida Statutes (2022), because it would be a lien against the entire Green Terrace, imposed without the unanimous consent of the

individual condominium unit owners.  Under these circumstances, the City is not entitled to a distribution from the tax deed sale surplus.

## Background

In 2006, Green Terrace's common elements were the subject of a code enforcement action, resulting in a fine for housing code violations.  The City moved against Green Terrace's condominium owners' association ("the Association") to have the fine recorded as a lien.  A code enforcement special magistrate issued an order imposing a lien after repairs imposed in a prior order had not been made.  The code enforcement fine assessed Green Terrace $100.00 per day, accruing until the violations were sufficiently addressed.

The code enforcement order stated that a lien was being imposed pursuant to section 162.09, Florida Statutes (2006), and that once recorded, it would constitute a lien over certain real and personal property:

> This Order shall be recorded in the Public Records of Palm Beach County, Florida and shall constitute a lien against all real property, and all personal property, *owned by the Respondent(s)* within Palm Beach County, Florida, pursuant to Fla. Stat. 162.09.

(Emphasis added).  The order explicitly listed the Association as the respondent in the action, with 2800 Georgia Avenue noted as the "violation address."  Both Green Terrace's common elements and the Association share that address.  The order did not state the lien was against any individual unit owner(s), nor was any individual unit owner listed as a respondent.  No legal description of the property was included in the order, and no notice was provided to individual unit owners.

Meanwhile, the code enforcement fine continued to run, and nothing in the record indicates that it does not still run to this day.

Over a decade later, one of Green Terrace's condominium units, the Condo Unit, was the subject of a tax certificate and a tax deed sale.  Appellant was the owner of the Condo Unit before the tax deed sale.  The tax deed sale resulted in a surplus.

After the sale, several entities sought distributions from the surplus by filing claims with the Clerk of Palm Beach County.  Only two of these entities are relevant to the instant case: (1) Appellant, as the prior owner of the Condo Unit, and (2) the City, as the holder of the code enforcement lien against Green Terrace's common elements.  The City's Clerk, being unsure as to how the surplus should be distributed, filed an interpleader

action requesting that the court determine how the funds should be distributed.

Eventually, the City moved for summary judgment, arguing that as a governmental lienholder holding a code enforcement lien on Green Terrace's property, it was entitled to a portion of the Condo Unit's tax deed sale surplus. The City cited section 197.582(2)(a), Florida Statutes (2022), in support, arguing that section required the clerk to distribute a portion of the surplus to governmental holders of recorded liens "against the property." The City reasoned that its code enforcement lien was against Green Terrace's common elements, and because each condominium unit owned a proportional share of Green Terrace's common elements, the lien was also against the Condo Unit.

Appellant filed its response, contending that the code enforcement lien was not a "lien against the property" of Green Terrace, because the lien was not filed against the units. Appellant attached a title search on the Condo Unit which did not show the lien.

The trial court agreed with the City and held the code enforcement lien was "against" the Condo Unit under section 197.582(2)(a) and that the City was entitled to portion of the surplus. This timely appeal followed.

**Analysis**

We review purely legal questions and the grant of summary judgment de novo. *Fla. Bar v. Rapoport*, 845 So. 2d 874, 877 (Fla. 2003); *City of Boynton Beach v. Janots*, 101 So. 3d 864, 866 (Fla. 4th DCA 2012).

Resolution of this case requires us to determine whether the City's code enforcement lien entitles the City to a distribution from the Condo Unit's tax deed sale surplus. Under section 197.582(2)(a), governmental lienholders have first priority in surplus distributions from a tax deed sale if they have a lien "against the property":

> The clerk shall distribute the surplus to the governmental units for the payment **of any lien of record held by a governmental unit against the property**, including any tax certificates not incorporated in the tax deed application and omitted taxes, if any.

§ 197.582(2)(a), Fla. Stat. (2022) (emphasis added).[1]

---

[1] Generally, the Clerk will disburse the surplus in the following order: (1) governmental liens, (2) lienholders of record in order of priority, and (3)

We assume for purposes of this appeal that the lien is against Green Terrace's "common elements" because that is what the parties have argued on appeal and below.[2] Thus, the pertinent question to address is whether a code enforcement lien attached to Green Terrace's common elements is also a lien "against" Green Terrace's property and ultimately the individual condominium units.

We hold that the City's code enforcement lien is not a lien "against" the property as a whole or the individual Condo Unit. In reaching this conclusion, we begin with the understanding that the starting point for statutory interpretation is the plain text of the statute. *Conage v. United States*, 346 So. 3d 594, 598 (Fla. 2022).

### A. The City's Position is in Conflict with Section 718.121(1)

If the meaning of "against the property" means that a lien against common elements is also a lien against all of Green Terrace's property and the individual condominium units, a conflict with section 718.121(1), Florida Statutes (2022), is created. We are mindful that "[c]ourts, in construing a statute, must, if possible, avoid such construction as will place a particular statute in conflict with other apparently effective statutes covering the same general field." *L.S. v. State,* 346 So. 3d 42, 45 (Fla. 4th DCA 2022) (quoting *Wakulla Cnty. v. Davis*, 395 So. 2d 540, 542 (Fla. 1981)).

Section 718.121 prohibits liens against a condominium as a whole without the unanimous consent of the condominium unit owners:

> Subsequent to recording the declaration and while the property remains subject to the declaration, **no liens of any nature are valid against the condominium property as a whole except with the unanimous consent of the unit**

---

titleholders of record. *Velasquez v. Ettenheim*, 89 So. 3d 981, 983 (Fla. 3d DCA 2012).

[2] We note that the Association does not own Green Terrace's common elements (though it is responsible for their maintenance), and the only apparent basis for both parties arguing that the lien was being imposed against "the common elements" is that the order imposing the code enforcement lien states that 2800 Georgia Avenue was the "violation address." Both Green Terrace's common elements and the Association are located at 2800 Georgia Avenue. Notwithstanding the lien listing the Association as the only "respondent," both parties have argued that the lien is against Green Terrace's common elements; neither party maintains that the lien is against the Association.

**owners.** During this period, liens may arise or be created only against individual condominium parcels.

§ 718.121(1), Fla. Stat. (2022) (emphasis added).

A review of chapter 718's definitions related to condominiums is pertinent in addressing the dispute at issue. A condominium is "that form of ownership of real property created pursuant to this chapter, which is comprised entirely of units that may be owned by one or more persons, and in which there is, appurtenant to each unit, **an undivided share in common elements**." § 718.103(11), Fla. Stat. (2022) (emphasis added).[3] A "'[u]nit' means a part of the condominium property which is subject to exclusive ownership." § 718.103(28), Fla. Stat. (2022). "[C]ommon elements" are "portions of the condominium property not included in the units." § 718.103(8), Fla. Stat. (2022). "'Condominium property' means the lands, leaseholds, and personal property that are subjected to condominium ownership, whether or not contiguous, and all improvements thereon and all easements and rights appurtenant thereto intended for use in connection with the condominium." § 718.103(13), Fla. Stat. (2022).

By using the phrase "no liens of any nature," section 718.121(1) applies to **all** types of liens, including code enforcement liens. *See Baker v. Econ. Rsch. Servs., Inc.*, 242 So. 3d 450, 453 (Fla. 1st DCA 2018) ("'any' means 'all'" (quoting *Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1028 (11th Cir. 2003))). Therefore, section 718.121(1) prohibits code enforcement liens that are placed on a condominium as a whole without the unanimous consent of the unit owners.

*Bank One, Dayton, N.A. v. Sunshine Meadows Condominium Ass'n*, 641 So. 2d 1333 (Fla. 1994), is instructive in construing and applying section 718.121(1). There, the Florida Supreme Court addressed whether a mortgage encumbering the common elements of a condominium could be the basis to foreclose on all the individual condominium units.

The developer completed the first phase of a condominium equestrian center, recording the declaration and conveying the condominium units to their owners. *Id.* at 1334. Soon thereafter, the developer executed a mortgage to Bank One that secured a loan for the construction of common elements of the second phase of the condominium, which had not yet been built. *Id.* A couple years later, the developer amended the declaration to include the property in phase II, and then defaulted on the loan. *Id.*

---

[3] Subsections (1) through (31) of section 718.103, Florida Statutes, were redesignated as subsections (2) through (32), respectively, in 2023. *See* Ch. 2023-203, Laws of Fla. (amending § 718.103, Fla. Stat. (2022)).

Bank One subsequently sought foreclosure of the entire condominium property, including the interest of each unit owner. *Id.* "Bank One claimed that when the property covered by the mortgage was submitted to condominium ownership as part of Phase II, the mortgage encumbered not only the specifically described common property but also each unit in all phases of the condominium because the common property became an appurtenance to each unit." *Id.*

The supreme court rejected Bank One's argument, relying on the declaration of condominium, statutes, and mortgage law. Relevant to this appeal, the court explained that Bank One consented to having its mortgage subject to the declaration, meaning that section 718.121(1), Florida Statutes applied. *Id.* at 1336. The court further explained that the unit owners had no notice of the mortgage, let alone consented to it, so the mortgage violated the requirement that condominium owners consent to liens affecting condominium property as a whole:

> Florida condominium law provides that "while the property remains subject to the declaration, no liens of *any nature* are valid against the condominium property as a whole *except with the unanimous consent of the unit owners.* During this period, liens may arise or be created only against individual condominium parcels." § 718.121(1), Fla. Stat. (1983) (emphasis added). The unit owners in this case were not even given notice of any potential future obligation to pay a mortgage incurred on common elements of future phases, much less did the owners consent to a lien against the condominium property as a whole.

*Bank One*, 641 So. 2d at 1335.

The supreme court concluded that Bank One was not entitled to foreclose on its mortgage:

> [B]ased upon the declaration of condominium, Florida condominium law, and the law of mortgages, we find that Bank One is not entitled to foreclose its lien against the condominium units. . . . [B]y consenting to the 1987 amendment to the declaration, Bank One subjected its mortgage interest in the condominium property to the declaration, including the provisions that prohibit separating the title to a unit from the common elements and require the common elements to remain undivided so long as the condominium exists.

6

*Id.* By citing section 718.121(1) and finding that the owners did not consent to a lien against the condominium property as a whole, the supreme court determined that a lien on the common elements of a condominium, when applied to all the individual units, was a lien against the entire condominium property requiring the individual unit owners' consent.

Under *Bank One*'s rationale, the City has attempted to impose a lien on the entirety of Green Terrace by imposing a lien on the common elements, which conflicts with section 718.121(1). Indeed, if the code enforcement lien at issue here applies to the individual condominium units by virtue of the common elements, that lien essentially encumbers the entire condominium because the lien affects every interest comprising the condominium. The lien would be against the common elements, all the individual units, and the Association (as the named respondent on the order imposing the lien). When a lien applies equally to every interest comprising a condominium, the lien is fairly characterized as affecting the condominium as a whole. Because Green Terrace's individual unit owners did not consent to the City's lien, the lien violates section 718.121(1).

### B. Lack of Condo Association Authorization of the Lien

Apportioning the lien onto individual condominium units would be error because Green Terrace's unit owners had not consented and because the lien's face does not indicate the lien is attached to individual condominium units. Our opinion in *Royal Ambassador Condominium Ass'n v. East Coast Supply Corp.*, 495 So. 2d 932 (Fla. 4th DCA 1986), dealt with an exception to section 718.121(1) that proves the general rule.

*Royal Ambassador* applied section 718.121(2), Florida Statutes (1981), which provided then, and still provided in 2022, in pertinent part:

> Labor performed on or materials furnished to a unit may not be the basis for the filing of a lien under part I of chapter 713, the Construction Lien Law, against the unit or condominium parcel of any unit owner not expressly consenting to or requesting the labor or materials. . . . Labor performed on or materials furnished to the common elements are not the basis for a lien on the common elements, **but if authorized by the association, the labor or materials are deemed to be performed or furnished with the express consent of each unit owner and may be the basis for the filing of a lien against all condominium parcels in the proportions for which the owners are liable for common expenses.**

7

§ 718.121(2), Fla. Stat. (2022) (emphasis added).

In *Royal Ambassador,* an order imposing a mechanic's lien listed the property subject to the lien as both the condominium and "all of the condominium parcels, except for Units 1705 and 1007, that have been created thereon in the proportions for which the owners thereof are liable for common expenses." 495 So. 2d at 933. Trying to invalidate the mechanic's lien, the condominium association argued that section 718.121(1) rendered the lien unenforceable on the basis that the lien sought to establish a lien against the property as a whole. *Id.* at 934. In response, the builder which held the mechanic's lien argued that under section 718.121(2), if the association authorized the work there was consent of all the individual condominium owners to impose a lien against the entire complex. *Id.* at 934.

We held that a mechanic's lien for materials furnished for roofing repairs to a condominium association's building should be claimed as a lien against the condominium's individual units, not the condominium as a whole:

> Thus, it is apparent that one claiming a lien for repairing common elements, such as the roof of a condominium building, **should claim a lien not upon the whole condominium property but, rather, upon all of the individual units contained in the condominium building in the proportion for which each unit is liable for common expenses.** Ideally, as we said in *Southern Colonial Mortgage Company, Inc. v. Medeiros*, 347 So. 2d 736 (Fla. 4th DCA 1977), describing each unit and its respective percentage share of common expenses in the claim of lien would neatly comply with section 718.121(2).

*Royal Ambassador*, 495 So. 2d at 934.

We explained that East Coast Supply was seeking a lien against the entire condominium, and we found the lien enforceable because it explicitly mentioned the condominium units and their proportional shares in the common elements. *Id.*

The key distinction between *Royal Ambassador* and *Bank One* is that *Royal Ambassador* applied section 718.121(2), which explicitly allows a mechanic's lien to be imposed against "all condominium parcels."[4]

---

[4] Under section 718.121(2), where labor is performed and materials are furnished to the common elements with the approval of the association, the association's

8

Because section 718.121(2) applies only to mechanic's liens, and the mortgage at issue in *Bank One* was not a mechanic's lien, the general prohibition on liens against a condominium as a whole applied. *See Bailey v. Shelborne Ocean Beach Hotel Condo. Ass'n, Inc.,* 307 So. 3d 74, 82 (Fla. 3d DCA 2020) (noting that where one of three exceptions did not apply, the general rule applied). Additionally, section 718.121(2) explicitly allows a condominium association to furnish the individual owners' express consent, whereas section 718.121(1) does not.

Thus, in *Royal Ambassador,* we could apportion the lien against individual units because the lien at issue was a section 718.121(2) mechanic's lien; the condominium unit owners had given their express consent; and the lien explicitly stated it was against certain individual condominium units.

Here, by contrast, the code enforcement lien is not a mechanic's lien, so section 718.121(2) does not apply. Also, Green Terrace's unit owners had not consented, because section 718.121(1) does not permit a condominium association to consent on behalf of its individual condominium unit owners. And the code enforcement lien's face did not state it was against the individual units or those units' proportional shares of the common elements. Nor does the record indicate the individual unit owners had been provided any notice of the proceedings to impose the lien. *See* § 162.06, Fla. Stat. (2022) (requiring notice of a code enforcement procedure be given to a violator); § 162.12, Fla. Stat. (2022) (governing how notice may be given).

We acknowledge Appellant neglected to argue below that Appellant lacked notice of the lien. However, we further acknowledge significant due process concerns are implicated where a city imposes a lien on an individual condominium unit without the owner having any notice of the lien. The City's lien did not appear on a title search run on the Condo Unit. The City's brief fails to explain how an individual condominium unit owner would have notice of the lien.

**Conclusion**

The City sought to impose a lien against Green Terrace as a whole by imposing a lien against Green Terrace's common elements. This violates section 718.121(1), which allows liens against an entire condominium only with all individual unit owners' consent. Therefore, the code enforcement lien was not "against" the Condo Unit, because such a lien cannot be construed as a lien against Green Terrace's property as a whole without

approval is deemed acceptance by all the unit owners and may be the basis to impose mechanic's liens against each individual condominium parcel.

Green Terrace's individual unit owners' consent.

Moreover, the City's imposition of a lien against the entirety of Green Terrace without notice to any individual condominium unit owners would be a denial of due process. Also problematic is the City claiming a lien against every individual condominium unit, yet the City is enforcing this lien against only those units that are involved in unrelated legal proceedings.

Accordingly, we reverse the trial court's partial summary judgment in the City's favor. The City is not entitled to a portion of the surplus funds based on the City's 2006 code enforcement lien.

*Reversed and remanded with instructions.*

WARNER and MAY, JJ., concur.

\*         \*         \*

***Not final until disposition of timely filed motion for rehearing.***